# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA
\* \* \*

| | |
|---|---|
| Mauricio Jasso, *et al.*, | Case No. 2:20-cv-00858-RFB-BNW |
| Plaintiffs, | |
| v. | **REPORT AND RECOMMENDATION**<br>**re ECF No. 110** |
| Wells Fargo Bank, N.A., *et al.*, | |
| Defendants. | |

Plaintiffs filed a motion to amend their complaint seeking to add a claim against Defendants for aiding and abetting fraud. ECF No. 110. Defendants responded at ECF No. 120, and Plaintiffs replied at ECF No. 144.

**I.      Background**

Plaintiffs allege that nonparty Daniel Maza-Noriega conducted a Ponzi scheme with the assistance and participation of Wells Fargo. Maza and Plaintiffs essentially grew up together as friends and family in Mexico. Later in life, Maza and Plaintiff Jasso established JAMA as 50-50 co-owners. JAMA was used as a vehicle for Plaintiffs to invest funds into Maza's own entity, First Prime Mortgage (FPM).

Plaintiffs were led to believe that their funds were being invested by Maza and FPM into foreclosed American real estate. The supposed plan was that FPM would renovate the real estate and sell it at a premium to a Chinese investment company. According to the JAMA investment agreements, investors would receive a 30% or higher return. However, Plaintiffs allege that once funds reached the FPM/Wells Fargo accounts, Maza would simply funnel his investors' millions into one of his other Wells Fargo checking accounts. Soon after, Maza would use the money to pay off his wife's American Express Black Card, or he would wire the money offshore to Russia, Hong Kong, Mexico, Canada, or Europe.

According to Plaintiffs, Maza initially tried opening the JAMA account at Citibank, Bank of America, and JPMorgan Chase. However, each of these banks closed Maza's accounts after only one month, allegedly because of fraudulent activity. Maza eventually turned to Wells Fargo, where he maintained the FPM accounts for some time. Wells Fargo employee/individual Defendant Katherine Darrall supposedly insisted that Citibank was at fault for the closure of Maza's accounts, and she explained to Jasso that Maza was an "excellent performer" and "one of our best clients." Individual Defendant Jose Rico was also a Wells Fargo banker during the alleged events, and he supposedly joined Darrall in making statements about the success of FPM and Maza. Jasso conveyed these supposed assurances to the other Plaintiffs. Based on these assurances, Plaintiffs invested millions more into Wells Fargo's accounts.

Eventually, after Plaintiffs invested $25 million (and reinvested $15 million) into FPM, Jasso demanded to see the FPM account balances. Jasso revealed that the accounts contained a balance of negative $1,000. This lawsuit followed. Plaintiffs asserted claims for negligence, aiding and abetting breach of fiduciary duty, fraudulent misrepresentation, fraudulent inducement, fraudulent concealment, and civil conspiracy.

## II.     Legal Standard

When a party moves to amend the pleadings after the expiration of the deadline established in the scheduling order, courts review the request through a two-step process. First, courts resolve the motion to amend the scheduling order, which is governed by the "good cause" standard outlined in Rule 16(b) of the Federal Rules of Civil Procedure. *See, e.g.*, *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992). "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Id*. at 609. Courts look to whether the deadline set in the scheduling order "cannot reasonably be met despite the diligence of the party seeking the amendment." *Id*. Although prejudice to the opposing party may also be considered, the focus of the inquiry is on the movant's reasons for seeking modification. *Id*. "If that party was not diligent, the inquiry should end." *Id*. The party seeking amendment bears the burden of establishing diligence. *See, e.g.*, *Morgal v. Maricopa County Bd. Of Sup'rs*, 284 F.R.D. 452, 460 (D. Ariz. 2012).

In addition to showing good cause, Plaintiffs must also establish that their failure to act was the result of excusable neglect. *See* LR 26-4(a) (a request to extend a scheduling order deadline made less than twenty-one days before expiration of that deadline must be supported by a showing of excusable neglect in addition to the good cause required by LR 6-1 and Rule 16). Courts consider at least four factors in determining whether neglect is excusable: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith. *See Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1223–24 (9th Cir. 2000) (*citing Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 395 (1993)). The determination of whether neglect is excusable is ultimately an equitable one, taking account of all relevant circumstances surrounding the party's omission. *See Pioneer*, 507 U.S. at 395. This equitable determination is left to the discretion of the district court. *See Pincay v. Andrews*, 389 F.3d 853, 860 (9th Cir. 2004).

If good cause and excusable neglect are established, courts then examine whether amendment is proper under the standards outlined in Rule 15(a) of the Federal Rules of Civil Procedure. Rule 15(a) provides that "[t]he court should freely give leave [to amend] when justice so requires," and there is a strong public policy in favor of permitting amendment. *Bowles v. Reade*, 198 F.3d 752, 757 (9th Cir. 1999). As such, the Ninth Circuit has made clear that Rule 15(a) is to be applied with "extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (per curiam). Under Rule 15(a), courts consider various factors, including: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of the amendment, and (5) whether the plaintiff has previously amended the complaint. See *id*. at 1052. These factors do not carry equal weight, however, and prejudice is the touchstone of the analysis. *See id.* The party opposing the amendment bears the burden of showing why leave to amend should be denied. *See, e.g.*, *Desert Protective Council v. U.S. Dept. of the Interior*, 927 F. Supp. 2d 949, 962 (S.D. Cal. 2013) (citing *Genentech, Inc. v. Abbott Labs.*, 127 F.R.D. 529, 530-31 (N.D. Cal. 1989)).

### III. Analysis

Plaintiffs argue that they can establish good cause to seek amendment of their complaint based on "new" discovery they recently received. This new discovery includes:

(1) Darrall's admission that she received a fraud alert from Bank of America regarding Maza prior to opening the accounts that enabled Maza to perpetrate the fraud on Plaintiffs;

(2) A copy of a handwritten note made by Darrall confirming her receipt of the June 2014 fraud alert that should have precluded Wells Fargo from allowing Maza to open the accounts he used to perpetrate the fraud on Plaintiffs;

(3) Documents from several large, national banks (including Citibank, JPMorgan Chase, and Bank of America) showing that each bank shut down Maza's accounts in the summer of 2014 (right before Wells Fargo opened his accounts) because of numerous alerts of possible fraud on Maza's accounts;

(4) A summary spreadsheet of Maza's fraud alerts showing that Wells Fargo received multiple fraud alerts on Maza's First Prime Management account in the very first week it was open in September 2014;

(5) Testimony from Ilona Mitchell (the Wells Fargo relationship manager for Maza's numerous business accounts) that it was her duty to meet with Maza and thoroughly understand his business to determine if there was fraud occurring but, based on instructions she received from Wells Fargo management, she did not fulfill her duty and thus never checked for fraud;

(6) Confirmation from Mitchell, as well as Maza's assistant, that Wells Fargo's interrogatory response denying the existence of a meeting between Mitchell and Maza was false and, documents provided by Maza's assistant alerting Mitchell and Wells Fargo to the fraud during that meeting; and

(7) Information that Wells Fargo's Financial Crimes Investigations unit was aware of Maza's fraud (which seems to indicate money laundering in addition to a Ponzi scheme) as early as April 2017 but did nothing to curb his criminal activity until Plaintiff Jasso uncovered Maza's fraud and reported it to Defendant Katherine Darrall on February 19, 2019.

In essence, Plaintiffs argue that before obtaining the information detailed above, they could not have alleged a claim for aiding and abetting fraud. Plaintiffs concentrate their argument on two of the seven pieces of information received from Wells Fargo: they explain that it was not until September 17, 2021 that they knew "Wells Fargo had received at least six indicators of Maza's fraud during the first five days he opened his FPM account," and not until the deposition of Ilona Mitchell (probably sometime in August of 2021) that they learned that "Wells Fargo's

management instructed employees to disregard their legal duty to thoroughly understand Maza's business practices, which would have prevented the fraud." ECF No. 110 at 10.

Additionally, Plaintiffs argue that Defendants will not be prejudiced by the amendment because: (1) the claims in the First Amended Complaint are virtually identical to those in the operative complaint (the elements for aiding and abetting fraud are almost identical to those already pled in the complaint regarding aiding and abetting breach of fiduciary duty); (2) there will not be a need for additional discovery (as Defendants have been defending the case as if the proposed new claim had been a part of the operative complaint); and (3) Plaintiffs are not seeking any extensions of the scheduling order.

Defendants argue that Plaintiffs have not been diligent in moving to amend, as they waited until eleven months after the deadline to amend to file the instant motion. (The date to amend per the scheduling order at ECF No. 20 was November 23, 2020.) As a result, Defendants argue that Plaintiffs cannot show good cause. This argument is comprised of two separate sub-arguments: (1) Plaintiffs' receivership motion (filed December 31, 2019 in state court) and the complaint (filed May 4, 2020 in state court) allege several instances of Wells Fargo aiding and abetting Maza in fraudulent activities such that Plaintiffs did not *recently* discover facts to support the new claim; and (2) the "new" discovery Plaintiffs rely on for not seeking amendment earlier does not stand for the proposition offered by Plaintiffs and was, in any event, received months prior to filing the instant motion.

In addition, Defendants argue that besides showing good cause, Plaintiffs must meet the excusable neglect standard, which they do not mention in their motion and in any event cannot meet. Lastly, Defendants argue that they will be prejudiced if the Court allows Plaintiffs to amend, because the proposed amended complaint adds "a deluge" of new facts which would require discovery and possibly re-opening depositions.

Plaintiffs reply that much of their inability to seek amendment sooner is related to Defendants' slow production of discovery and their need to file motions to compel. In addition, Plaintiffs ask the Court to apply the factors they discussed with regard to propriety of amendment

under Rule 15 to the factors needed to establish excusable neglect. Lastly, they reiterate that Defendants will not be prejudiced by amendment.

The Court is not persuaded by Plaintiffs' arguments and finds that they have not met their burden to show diligence. First, it is undisputed that Plaintiffs were aware of facts suggesting Defendants were aiding and abetting Maza's fraud as of (at least) the time that they filed the complaint (May 4, 2020). This is made clear by several allegations in the operative complaint alleging Wells Fargo assisted Maza in engaging in fraud, including paragraphs 75, 76, 86, 96, 102, 103, 107, 108, 173, 178, 182, and 199.

Next, while it is true that Plaintiffs did not receive some of the discovery detailed above until August and September of 2021 (categories Nos. 4 and 5), Plaintiffs completely discount (and do not address) the rest of the discovery in categories 1-3 and 7, which was received between November 2020 and June 2021. In addition, Plaintiffs do not dispute that they were in possession of information discussed in category No. 6 (Maza's assistant allegedly providing Wells Fargo copies of documents alerting Mitchell and Wells Fargo to the fraud during that meeting) as of the time of the filing of the complaint.

Accordingly, the Court finds that Plaintiffs were not diligent in waiting until October 13, 2021 to move to amend. As stated above, the deadline for amendments was November 20, 2020. Plaintiffs had the bulk of the information needed to add the claim in question several months before October of 2021. While it is questionable whether Defendants would have been prejudiced by amendment (the proposed amended complaint contains a variety of new factual allegations which could easily necessity additional discovery and reopening depositions), the Court will not address this argument in detail, as "the focus of the inquiry is on the movant's reasons for seeking modification." *Mammoth Recreations, Inc*., 975 F.2d at 609.

Accordingly, the Court recommends that the motion to amend be denied. Given no good cause has been shown under Rule 16, the Court does not analyze the factors governing excusable neglect or those governing amendments under Rule 15.

### IV. Conclusion

**IT IS THEREFORE RECOMMENDED** that Plaintiffs' motion to amend (ECF No. 110) be DENIED.

### NOTICE

This report and recommendation is submitted to the United States district judge assigned to this case under 28 U.S.C. § 636(b)(1). A party who objects to this report and recommendation may file a written objection supported by points and authorities within **14 days** of being served with this report and recommendation. Local Rule IB 3-2(a). Failure to file a timely objection may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED: January 31, 2022.

BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE