**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

Mauricio Jasso, *et al.*,

                Plaintiffs,

      v.

Wells Fargo Bank, N.A., *et al.*,

                Defendants.

Case No. 2:20-cv-00858-CDS-BNW

**ORDER re ECF Nos. 237, 253, and 269**

Before the Court are three motions:

- Plaintiffs Mauricio Jasso *et al.*'s sixth motion to compel, filed June 10, 2022. ECF No. 237. Defendants opposed at ECF No. 241, and Plaintiffs replied at ECF No. 250. The Court heard oral arguments on August 4, 2022. ECF No. 265.

- Defendant Wells Fargo Bank, N.A.'s motion for a protective order related to Plaintiff's Federal Rule of Civil Procedure 30(b)(6) notice of deposition of Defendant Wells Fargo, filed on July 13, 2022. ECF No. 253.[1] Plaintiffs opposed at ECF No. 268, and Defendant replied at ECF No. 273. The Court heard oral arguments on September 1, 2022. ECF No. 276.

- Plaintiffs' Motion to Seal, filed on August 8, 2022. ECF No. 269. Defendants Katherine Darrall and Wells Fargo filed a response in support of Plaintiffs' motion at ECF No. 274. Plaintiffs did not file a reply.

For the reasons discussed below, the Court will grant in part and deny in part Plaintiffs' sixth motion to compel, Defendants' motion for a protective order, and Plaintiffs' motion to seal.

**I.      Plaintiffs' Sixth Motion to Compel and Defendant's Motion for Protective Order**

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). The definition of "relevant information" in Rule 26(b)(1) is broad. Relevant information "need

---

[1] A sealed copy of Defendant's motion for protective order is filed at ECF No. 252.

1  not be admissible in evidence to be discoverable." *Id.* Courts construe discovery rules liberally to

2  serve the purposes of discovery: providing the parties with information essential to the proper

3  litigation of all relevant facts, eliminating surprise, and promoting settlement. *Oppenheimer Fund,*

4  *Inc. v. Sanders,* 437 U.S. 340, 351 (1978).

5  Under Fed. R. Civ. P. 37, "a party seeking discovery may move for an order compelling

6  an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3)(B). "The party

7  seeking to compel discovery has the burden of establishing that its request satisfies the relevancy

8  requirements of Rule 26(b)(1). Thereafter, the party opposing discovery has the burden of

9  showing that the discovery should be prohibited, and the burden of clarifying, explaining or

10  supporting its objections." *Garces v. Pickett*, No. 217CV0319JAMACP, 2021 WL 978540, at *2

11  (E.D. Cal. Mar. 16, 2021) (citations omitted). The opposing party is "required to carry a heavy

12  burden of showing why discovery was denied." *Id*. (citation omitted).

13  A party served with a Rule 30(b)(6) deposition notice may move for a protective order for

14  good cause. Fed. R. Civ. P. 26(c).

15  **A.     Plaintiffs' Sixth Motion to Compel (ECF No. 237)**

16  In August of last year, this Court ordered Wells Fargo to produce "documents or

17  information regarding policies and procedures concerning the retention of documents that

18  [D]efendants claim no longer exist." ECF No. 80 at 10. The Court made "clear that its ruling . . .

19  applies to both short- and long-term storage of emails." *Id*. at 11.

20  Plaintiffs assert that Wells Fargo has not (entirely) complied with the Court's order

21  because its production failed to include documentation explaining that it was subject to an Office

22  of the Comptroller Consent Decree between 2015 and 2021. ECF No. 237 at 3. This 2015 OCC

23  Consent Decree required the Bank to save e-mails belonging to its Business Banking Group

24  employees. *Id*. This would mean that these e-mails were not subject to Wells Fargo's e-mail

25  retention policy that required automatically deleting e-mails found in an employee's inbox after

26  six months or after three years if the e-mails had been moved into a folder. *See id*.

27  According to Plaintiffs, the Consent Decree is significant because it allowed for the

28  preservation of Business Banking Group employee e-mails during the time period they allege

these employees helped Daniel Maza Noriega defraud Plaintiffs. Plaintiffs submit that Maza was accepted into the Business Banking Group and began opening multiple accounts with the Bank as early as 2014. *Id*. at 4.

But, as Plaintiffs explain, Wells Fargo's position has been that, because of its e-mail retention policy, it should only have e-mails dating back to 2017 (three years prior to this lawsuit being filed). *Id*. at 5. In light of Wells Fargo's position and prior production and in light of the recently obtained information regarding the Consent Decree, Plaintiffs move to compel a Rule 30(b)(6) deposition to better understand "the void of Wells Fargo emails" pre-2017. *Id*. Such a request necessarily implicates learning about Wells Fargo's discovery process in this case.

### i.      Discovery on Discovery

"Discovery on discovery" allows one party to conduct discovery into another party's discovery process. Although this type of discovery is not prohibited, it is disfavored. *Anstead v. Virginia Mason Med. Ctr.,* No. 221CV00447JCCJRC, 2022 WL 1641425, at *5 (W.D. Wash. May 24, 2022) (citation omitted). As a result, "requests for such discovery are closely scrutinized" and determined on a case-by-case basis. *Id*. "Generally, courts will only permit such discovery where there is some indication that a party's discovery has been insufficient or deficient." *Id*.

Here, Plaintiffs have established an adequate factual basis to allow "discovery on discovery."

First, Plaintiffs explain that Wells Fargo has claimed that it has limited e-mails from 2014 to 2017 because of the Bank's e-mail retention policy. ECF No. 237 at 3, 5. According to Wells Fargo, its retention policy[2] requires deleting all e-mails in an employee's inbox after six months or after three years if the e-mails were moved into a folder. *Id*. As a result of this retention policy, Wells Fargo has primarily turned over e-mails from 2017 to present. *Id*. at 5.

Second, Plaintiffs reference the testimony of Wells Fargo Business Banking Group employee Monica Kennedy. *Id*. at 3, 6. Kennedy testified (at her deposition on February 15,

---

[2] Wells Fargo notes in its opposition that it does not have a "'retention' policy *per se*[.]" ECF No. 241 at 3. It does, however, have "timelines by which emails are automatically deleted." *Id*.

1    2022) that her e-mails were subject to the 2015 OCC Consent Decree's requirement that Business

2    Banking Group employees not delete any e-mails. *Id*. According to Kennedy, her e-mails were

3    not deleted and at least those from 2017 or 2018 were—as of the deposition date—still likely

4    available on a drive she had to use to comply with the OCC Consent Decree. *Id*. at 6. In fact,

5    Kennedy was able—as of early 2022—to produce e-mails from at least 2017, putting into

6    question the Bank's timelines for deleting e-mails. *Id*. at 8.

7            One of the issues in this case is whether Wells Fargo employees aided Maza in defrauding

8    Plaintiffs by helping him open multiple fake accounts between 2014 and 2019. Subsumed within

9    this issue is Plaintiffs' other allegation that Wells Fargo employees made statements to Plaintiffs

10   whereby they legitimized Maza's real-estate investments. Given these allegations (which the

11   Court does not intend to present as exhaustive or as true), any e-mails sent or received by Wells

12   Fargo employees regarding Maza's accounts are relevant to this case. *See* Fed. R. Civ. P.

13   26(b)(1).

14           In addition, Wells Fargo's position that it would not have e-mails prior to 2017 because of

15   its retention policy appears to be inconsistent with both the Consent Decree requiring Wells Fargo

16   to maintain e-mails relating to its Business Banking Group employees and some of Wells Fargo's

17   own production (e.g., producing e-mails from November 2014 and April 2015). *See* ECF No. 237

18   at 5, 11–12.

19           As noted above, the general rule is that courts will only permit "discovery on discovery"

20   where there is some indication that a party's discovery has been insufficient or deficient.

21           Based on this record, the Court finds that Plaintiff has shown an adequate factual basis

22   (not simply speculation) that Wells Fargo's discovery has been insufficient or deficient. By

23   asserting that it would not have any e-mails (relevant or not) from any time before 2017 due to its

24   retention policy (that required the automated deletion of e-mails within a certain time period), and

25   by not disclosing to Plaintiffs that an OCC legal hold existed over certain e-mails that precluded

26   deleting some Business Banking Group employee e-mails, Wells Fargo has justified Plaintiffs'

27   request to further explore the factual basis for the Bank's positions. *See Cardinali v. Plusfour,*

28   *Inc.,* No. 216CV02046JADNJK, 2019 WL 3456630, at *4 (D. Nev. June 20, 2019). The Court

1    further finds that understanding what happened to the e-mails subject to the OCC legal hold and

2    relating to Business Banking Group employees is relevant to Plaintiffs' allegations that some

3    members of this (BBG) department played a role in helping Maza defraud Plaintiffs.

4           The Court is not persuaded by Wells Fargo's argument that its duty to preserve e-mails

5    under the Consent Decree was a duty owed to the OCC, not to Plaintiffs, as this argument misses

6    the mark. ECF No. 241 at 2, 6. The issue is not whether Wells Fargo retained any e-mails relating

7    to Maza because of the Consent Decree but whether Wells Fargo still possessed these e-mails at

8    the time that this lawsuit was filed, at which point it had a duty to preserve them. *Am. Career*

9    *Coll., Inc., et al. v. Mario Oswaldo Medina, Sr., et al. Additional Party Names: Pronto Wellness,*

10   *Roger Ortiz, Rolando Valdivia, W. Coast Univ., Inc., Unete Healthcare Assocs., LLC,* No. CV 21-

11   698 PSG (SKX), 2022 WL 3452790, at *3 (C.D. Cal. July 6, 2022) (citation omitted)

12   ("The duty to preserve material evidence arises not only during litigation but also extends to that

13   period before the litigation when a party reasonably should know that the evidence may be

14   relevant to anticipated litigation."); *see also* Fed. R. Civ. P. 37(e).

15          Wells Fargo's position is that it has no additional e-mails to produce because the Consent

16   Decree allowed Bank employees to delete e-mails that were not within the Consent Decree's

17   scope. ECF No. 241 at 5. While that may be the case, Plaintiffs will be allowed to test if any

18   outstanding e-mails exist, particularly in light of Kennedy's deposition testimony.

19          Wells Fargo further argues that the Consent Decree was not "prompted" by or specific to

20   Maza's accounts. ECF No. 241 at 4. However, this does not undermine Plaintiffs' argument that,

21   at the time this lawsuit was filed, Wells Fargo was subject to a litigation hold that included Bank

22   employees who were involved with Maza and his accounts (even if the Consent Decree was not

23   inspired by or about Maza). Plaintiffs' argument gains further traction upon learning that the

24   Consent Decree did not expire until 2021 (many months after this case was initiated) and "applied

25   only to specific document categories relevant to the work the BBG was performing under the

26   2015 Consent Order." *Id*. at 5. As identified above, Maza's accounts were part of the Business

27   Banking Group.

28

1      The Bank further submits that it communicated to Plaintiffs in a letter dated June 28, 2021

2   that its "email retention schedule applies company-wide, except that automatic deletion does not

3   occur as to accounts for employees once a litigation hold is put in place as to those employees."

4   ECF No. 241 at 3 n.2. The Bank appears to suggest that this contradicts Plaintiffs' argument that

5   they did not previously know that the 2015 OCC Consent Decree suspended the company's e-

6   mail retention policy. *Id*. However, per Wells Fargo's own admission, this statement was made in

7   "a different context." *Id*. But even assuming that Plaintiffs knew about the Consent Decree, it

8   does not change the need for them to be able to question Wells Fargo further on this point.

9      Furthermore, the Court is not persuaded by Wells Fargo's argument that it has nowhere

10   else to search for e-mails because there was no separate drive for e-mails retained by the Consent

11   Decree. ECF No. 241 at 6. There may not be a separate drive (or "OCC Database"). But, as

12   Plaintiffs have shown, Wells Fargo's presentation of its e-mail retention policy has furthered the

13   idea that no e-mails before 2017 could exist (whether they relate to Maza or not) because of the

14   six-month or three-year automatic deletion processes. Yet pre-2017 e-mails could and should

15   have existed at the time Plaintiffs filed suit and arguably should have been retained as evidenced

16   by some of Wells Fargo's own production[3] and Kennedy's deposition.

17      It is not clear whether any of the e-mails retained due to the Consent Decree relate(d) to

18   Maza and the allegations in Plaintiffs' complaint, but given that the Consent Decree placed a

19   legal hold on the department that Maza worked with, Plaintiffs have a right to inquire into that

20   legal hold as it is relevant to its claims regarding Wells Fargo's role in Maza's alleged Ponzi

21   scheme.

22      Finally, the Court considered Wells Fargo's argument that Kennedy misunderstood the

23   Consent Decree's legal hold. But this argument can be substantiated only through the requested

24   discovery. This is because Kennedy, who has worked for Wells Fargo since 2008 and the

25   Business Banking Group since 2017, testified under oath that her e-mails were subject to a legal

---

[3] Wells Fargo admits (and Plaintiffs do not dispute) that it has produced e-mails dated pre-2017 to show that it has
produced all relevant e-mails in its possession, custody, or control. But this admission raises additional questions
regarding the Bank's search and preservation methods. For example, if Wells Fargo's retention policy required
automatically deleting six-month-old e-mails found in an employee's inbox or three-year-old e-mails found in an
employee's folder, then how could the Bank have produced e-mails from 2014 or 2015?

1    hold under the Consent Decree that prevented her from deleting e-mails. ECF No. 237-11 at 16,

2    222 ("We were on legal hold for the consent order and could not delete any emails."). She further

3    testified that she has "all my emails saved going back to forever . . ." though they can be "a

4    stinker to find . . . ." *Id.* at 220–21. This testimony lends credence to Plaintiffs' belief that Wells

5    Fargo may not have produced or preserved all relevant e-mails because it relied on the Bank's

6    timelines for deleting e-mails (as opposed to also considering e-mails preserved through the

7    Consent Decree).

8         The Court therefore finds that Plaintiff has established that the following "discovery-on-

9    discovery" is relevant and an adequate factual basis exists for it. *See Mortg. Resol. Servicing, LLC*

10   *v. JPMorgan Chase Bank, N.A.,* No. 15CIV0293LTSJCF, 2016 WL 3906712, at *7 (S.D.N.Y.

11   July 14, 2016) (noting that there "are circumstances where . . . collateral discovery—also known

12   as discovery on discovery—is warranted . . . [but a] party must provide an adequate factual basis

13   for its belief that discovery on discovery is warranted") (internal quotation marks and citation

14   omitted). It also finds that Wells Fargo has not met its burden to show undue burden or expense.

15   Accordingly, the Court will allow Plaintiffs to conduct a 30(b)(6) deposition to pose questions

16   about the following topics:

17        (1) the 2015 OCC Consent Decree's e-mail retention policy concerning Wells Fargo's

18   Business Banking Group employees, including which Bank employees were subject to the legal

19   hold, the scope of the legal hold, the Bank's processes for complying with the e-mail retention

20   requirements concerning the Business Banking Group employees (including the manner in which

21   these e-mails were stored and whether e-mail deletion was optional), and the date(s) for when the

22   Bank implemented the legal hold;[4] and

23        (2) Wells Fargo's review and preservation of e-mails retained under the Consent Decree

24   that are relevant to this litigation, including when this was performed (if at all).

25

26

27   [4] Plaintiffs also seek a court order directing Wells Fargo to "search and produce all responsive documents still
     retained" and "to disclose the dates when any documents" specific to several Business Banking Group employees and
28   subject to the 2015 OCC legal hold "were deleted by Wells Fargo[.]" ECF No. 237 at 3–4. If, upon conducting the
     30(b)(6) deposition, Plaintiffs still find these requests relevant, they are free to file an appropriate motion.

1    Additionally, the Court will order Wells Fargo to provide Plaintiffs with a copy of the

2    2015 OCC Consent Decree with the appropriate redactions.[5] Of note, Wells Fargo suggests in its

3    opposition that the e-mails retained through the 2015 OCC Consent Decree are privileged but

4    does not explain why. *See* ECF No. 241 at 2. To the extent that certain e-mails are privileged,

5    Wells Fargo must produce a privilege log.

6    Finally, the Court takes note of Plaintiffs' argument that there may have been spoliation of

7    evidence but makes no findings on this issue and Wells Fargo's counter that such an argument is

8    baseless. If Plaintiffs maintain this position, for example following the 30(b)(6) deposition

9    regarding Wells Fargo's "discovery on discovery," they are free to file a motion regarding this

10   issue.

11                          **ii.        Wells Fargo's Roles and Responsibilities Agreement**

12   Plaintiffs' position is that Wells Fargo has failed to turn over documents relating to

13   BSA/AML Alerts or the Bank's Roles and Responsibilities Agreement that touches on these

14   Alerts. ECF No. 237 at 13–14.

15   The Court finds that the Roles and Responsibilities Agreement is relevant to this case, as

16   it includes policies and procedures relating to monitoring and reviewing BSA/AML Alerts. In

17   addition, these Alerts are relevant to one of the contested issues in this case, which is Wells

18   Fargo's alleged role (if any) vis-à-vis Maza's alleged fraudulent accounts and transfers. The

19   Court further finds that this Agreement is part of Wells Fargo's BSA policies, which the Court

20   previously ordered Defendant to turn over to Plaintiffs.

21   That said, with respect to the BSA/AML Alerts, the Court previously ordered Wells Fargo

22   to produce these Alerts to Plaintiffs (ECF No. 80 at 5–6). And Plaintiff has not shown that Wells

23   Fargo has failed to comply with this order. As such, no further action by Wells Fargo regarding

24   these Alerts is required.

25                          **iii.       Sanctions**

26   Whereas Plaintiffs have requested that the Court reserve its ruling on whether to issue

27

28   ───────────────
     [5] Redactions can include anything not relating to the legal hold.

1    sanctions, Defendant argues that the Court should award it fees for having to respond to Plaintiffs'

2    motion to compel.

3         The Court will exercise its discretion and not grant Plaintiffs sanctions under Fed. R. Civ. P.

4    37(a)(5)(c).

5         **B.      Defendant Wells Fargo's Motion for Protective Order (ECF No. 253)**

6         Wells Fargo moves under Fed. R. Civ. P. 26(c)(1) for a protective order regarding

7    Plaintiffs' Rule 30(b)(6) deposition notice. The Bank seeks to narrow or disallow 11 deposition

8    topics.

9         The Court will address the topics below.

10        **i.      Topic No. 4**

11        Plaintiffs seek to depose a 30(b)(6) witness regarding the "FORE process to exit a Wells

12   Fargo Business Banking Group customer[.]" ECF No. 253 at 7. The Court finds this topic too

13   broad and agrees with Wells Fargo's proposed revision, which would require the deponent to

14   discuss "whether the FORE process was used to exit any of Maza's accounts, and if it was used, a

15   general description of the FORE process to exist a Wells Fargo Business Banking Group

16   customer." ECF No. 253 at 8–9.

17        Although Wells Fargo's position is that the FORE process was not used in closing any of

18   Maza's accounts, it concedes that an employee's internal quote suggests otherwise. *Id*. As such,

19   the Court finds this topic relevant and, with Wells Fargo's proposed revision, narrowly tailored.

20        **ii.     Topic Nos. 6–8, 13, and 18**

21        These topics concern Wells Fargo's automated account and transaction monitoring

22   systems. Wells Fargo's position is that these topics are irrelevant because these systems did *not*

23   flag Maza's accounts and transactions for human review. *Id*. at 4. But the Bank is, nonetheless,

24   willing "to designate a representative to confirm that none of these systems were turned-off or

25   suppressed as to the Maza accounts[.]" *Id*. Plaintiffs counter that these topics are relevant because

26   they allow questioning Wells Fargo "on how its [Bank Secrecy Act] policies applied to Maza's

27   account activity in this case[.]" ECF No. 268 at 5.

28

1    Plaintiffs' requests are relevant to their claim that Wells Fargo aided Maza in defrauding

2    them. However, they are overbroad. Plaintiffs concede that they "do not seek to impose any legal

3    duty on Wells Fargo 'to design or use automated systems to flag unusual transactions for human

4    review.'" *Id*. (quoting ECF No. 253 at 11). However, questioning Wells Fargo about how the

5    thresholds are developed (*see, e.g.,* Topic No. 7) would necessarily implicate whether the system

6    was properly designed rather than whether the Bank complied with its policies. While the latter is

7    relevant to the allegation that Wells Fargo had knowledge of Maza's fraudulent activities, the

8    former is not.

9    To the extent that Plaintiffs seek to confirm if Wells Fargo employees received alerts

10    regarding fraudulent activity on Maza's accounts (including any wire transfers), why such alerts

11    would have been generated, and how they responded to such alerts, they are free to do so.

12    Plaintiffs also are free to have a 30(b)(6) designee testify to whether the Bank's automated

13    account and transaction monitoring systems were suppressed, turned-off, or otherwise modified

14    with respect to Maza's accounts, as this request is both relevant and narrowly tailored. However,

15    Plaintiffs are not allowed to depose Wells Fargo's 30(b)(6) witness regarding Topic Nos. 6–8, 13,

16    and 18 as currently written.

17                    **iii.        Topic Nos. 26–29, 31**

18    As discussed in the order above, the Court found that Plaintiffs may depose a 30(b)(6)

19    witness regarding the 2015 OCC Consent Decree and outlined the parameters of this deposition.

20    As a result, the Court will deny these topics as moot.

21    **II.       Plaintiffs' Motion to Seal (ECF No. 269)**

22    Finally, before the Court is Plaintiffs' Motion to Seal at ECF No. 269. Defendants filed a

23    response in support of Plaintiffs' motion. ECF No. 274.

24    "It is clear that the courts of this country recognize a general right to inspect and copy

25    public records and documents, including judicial records and documents." *Nixon v. Warner*

26    *Commnc'ns, Inc.,* 435 U.S. 589, 597 (1978). As a result, if a party seeks to seal judicial records

27    attached to a motion that is "more than tangentially related to the merits of a case[,]" they must

28    provide "compelling reasons." *Ctr. for Auto Safety v. Chrysler Grp., LLC,* 809 F.3d 1092, 1101

1 (9th Cir. 2016); *see also Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir.

2 2006). But if a party seeks to seal judicial records attached to a motion that is "unrelated, or only

3 tangentially related, to the underlying cause of action[,]" they must only show good cause.

4 *Kamakana,* 447 F.3d at 1179–80 (internal quotation marks and citations omitted).

5   Here, Plaintiffs seek to maintain under seal their response to Wells Fargo's Motion for

6 Protective Order.[6] ECF No. 269 at 2. They argue that the response should remain under seal

7 because it includes documents that Wells Fargo has designated as "highly confidential" pursuant

8 to the parties' Stipulated Protective Order. *Id*. at 3. According to Plaintiffs and Wells Fargo, these

9 documents contain the Bank's "internal, non-public investigative processes and procedures." ECF

10 No. 274 at 3; *see also* ECF No. 269 at 4.

11   Here, because the motion for protective order (and its response) pertain to discovery and

12 are not related to the merits of the case, the "good cause" standard applies. *See Kamakana,* 447

13 F.3d at 1179.

14   The Court finds that protecting Wells Fargo's confidential commercial information

15 constitutes good cause to maintain the exhibits under seal. *See, e.g., Youtoo Techs., Inc. v.*

16 *Twitter, Inc.,* No. 317CV00414LRHWGC, 2017 WL 3396496, at *2 (D. Nev. Aug. 7, 2017). But

17 it does not find good cause to seal Plaintiffs' response in its entirety. *Ervine v. Warden*, 214 F.

18 Supp. 3d 917, 919 (E.D. Cal. 2016) (explaining that "[a]ny order sealing documents should be

19 'narrowly tailored' to remove from public view only the material that is protected") (citing *Press–*

20 *Enterprise Co. v. Superior Court,* 464 U.S. 501, 513 (1984)). The Court will therefore direct the

21 Clerk of Court to maintain Plaintiffs' response at ECF No. 268 under seal but also will direct

22 Plaintiffs to file a redacted version of the motion and its exhibits within 10 days of this Order.

23 **III. Conclusion**

24   **IT IS THEREFORE ORDERED** that Plaintiffs Mauricio Jasso *et al*.'s Sixth Motion to

25 Compel (at ECF No. 237) is GRANTED IN PART and DENIED IN PART consistent with this

26 Order.

27

28

---

[6] The sealed response is filed at ECF No. 268.

1    **IT IS FURTHER ORDERED** that Defendant Wells Fargo must produce a copy of the

2    Office of the Comptroller 2015 Consent Decree within 14 days of this Order. Sections not

3    relating to the litigation hold may be redacted.

4    **IT IS FURTHER ORDERED** that Wells Fargo produce a Fed. R. Civ. P. 30(b)(6)

5    witness to testify to the topics addressed in this Order.

6    **IT IS FURTHER ORDERED** that Wells Fargo provide Plaintiffs with a copy of its

7    Roles and Responsibilities Agreement within 14 days of this Order.

8    **IT IS FURTHER ORDERED** that Defendant Wells Fargo's Motion for Protective Order

9    (ECF Nos. 252, 253) is GRANTED IN PART and DENIED IN PART consistent with this Order.

10   **IT IS FURTHER ORDERED** that Plaintiffs' Motion to Seal (ECF No. 269) is

11   GRANTED IN PART and DENIED IN PART.

12   **IT IS FURTHER ORDERED** that the Clerk of Court is directed to maintain ECF No.

13   268 under seal.

14   **IT IS FURTHER ORDERED** that Plaintiffs are directed to refile their response at ECF

15   No. 268 in redacted form within 10 days of this Order.

16

17   DATED: September 13, 2022.

18   _____
     BRENDA WEKSLER

19   UNITED STATES MAGISTRATE JUDGE

20

21

22

23

24

25

26

27

28

12