ANTHONY P. SGRO (Nev. Bar No. 3811)
JENNIFER WILLIS ARLEDGE (Nev. Bar No.8729)
COLLEEN N. SAVAGE (NEV. BAR NO. 14947)
**SGRO & ROGER**
720 South 7th Street
Las Vegas, Nevada 89101
Telephone:  702.384.9800
TSgro@SgroandRoger.com
CSavage@SgroandRoger.com
JArledge@SgroandRoger.com

COURTNEY CAPRIO (*Admitted Pro Hac Vice*)
Florida Bar No. 933961
Jeffrey W. Gutchess (*Admitted Pro Hac Vice*)
Florida Bar No. 702641
Joanna Niworowski (*Admitted Pro Hac Vice*)
Florida Bar No. 1031440
AMANDA SUAREZ (*Admitted Pro Hac Vice*)
Florida Bar No. 1030808
**AXS LAW GROUP, PLLC**
2121 NW 2nd Avenue, Suite 201
Miami, FL 33127
Courtney@axslawgroup.com
Jeff@axslawgroup.com
Joanna@axslawgroup.com

*Attorneys for* PLAINTIFFS

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| MAURICIO JASSO, individually and in his capacity as the Court-Appointed Receiver of JAMA INVESTMENT GROUP, INC., *et al.*,<br><br>Plaintiff(s),<br><br>vs.<br><br>WELLS FARGO BANK, N.A., KATHERINE DARRALL, and JOSE RICO;<br><br>Defendant(s). | Case Number<br>2:20-CV-00858-CDS-BNW<br><br>**PLAINTIFFS' SEVENTH MOTION TO COMPEL 30(b)(6) DEPOSITION REGARDING AML ALERTS AND AML SOFTWARE USER GUIDES** |

Plaintiffs, by and through undersigned counsel and pursuant to Rule 26 and Rule 37 of the Federal Rules of Civil Procedure, hereby file their Seventh Motion to Compel Defendant Wells Fargo Bank, N.A. ("Wells Fargo," "Defendant" or the "Bank") to provide a 30(b)(6) witness for two limited, in-person depositions occurring simultaneously to confirm what, if any, software monitored the Daniel Maza-Noriega ("Maza") accounts for money laundering risks and whether any additional alerts exist for the Maza-related accounts. Plaintiffs also seek to compel the production of all User Guides for any software used to monitor Maza's accounts for money laundering risks and seek sanctions in the form of costs and fees incurred in connection with bringing this Motion, expenses for the continued depositions, and the expert fees associated with amending Plaintiffs' expert report after the depositions make clear which software, if any, monitored Maza's accounts.

## MEMORANDUM OF POINTS AND AUTHORITY

**I. BACKGROUND**

The (missing) anti-money laundering ("AML") alerts for Maza's accounts have colored this proceeding for years. On August 11, 2021, this Court ordered Wells Fargo to produce the "Bank Secrecy Act or fraud alerts that were generated by [its] automated account monitoring systems to identify suspicious activity for any of the Maza, JAMA and FPM accounts." ECF No. 80 at 5. The Court found "that the limited alerts on incoming funds [were] relevant on their face to plaintiffs' claims because they might show that Wells Fargo knew or should have known that incoming funds were fraudulent or suspicious." *Id.; see also* ECF No. 281 at 8 (reiterating that the August 11, 2021 Order at ECF No. 80 "ordered Wells Fargo to produce the[ BSA/AML] Alerts to Plaintiffs"). In response to this Court's Order, Wells Fargo ████████████████████████████████████ ████████████████████████████████████████████████████████. *See* **Exhibit 3**, filed

under seal (WF-9609). In particular, the alert records produced by Wells Fargo in response to the Court's Order showed that

*Id.* This included alerts relating to

*Id.* It appears that

. *Id.*

. *Id.*

*Id.*

. *Id.*

To learn more about the lack of alerts in light of Maza's highly suspicious account activity, Plaintiffs sought to depose Wells Fargo's corporate representative to inquire about any and all alerts on Maza's accounts. Before the depositions took place, Wells Fargo filed a motion for a protective order seeking to limit the topics contained in Plaintiffs' proposed notices of the Rule 30(b)(6) depositions. *See* ECF No. 253. The Court issued its ruling with respect to Defendants' motion for

protective order on September 13, 2022. ECF No. 281. In its ruling, one of the areas of examination permitted by the Court was "if Wells Fargo employees received alerts regarding fraudulent activity on Maza's accounts (including any wire transfers), why such alerts would have been generated, and how they responded to such alerts[.]" *Id.* at 10.  Plaintiffs served their notice of deposition of Wells Fargo pursuant to Rule 30(b)(6) on October 20, 2022. *See* **Exhibit 4**, filed under seal (Notice of Oct. 25, 2022 Deposition). The notice contained a subset of the areas of examination for the Rule 30(b)(6) depositions that were agreed to by Wells Fargo, including topics regarding alerts on the Maza-related accounts, as well as the additional topics ordered by the Court. *See id.* The deposition took place on October 25, 2022. *See* **Exhibit 5**, filed under seal (Grossman Dep. Tr. Excerpts).

As detailed below, Wells Fargo's corporate representative was inadequately prepared to testify regarding two crucial depositions topics—one of which was agreed to by Wells Fargo and one of which was ordered by the Court in its ruling on Defendants' motion for protective order. *See infra* at 3. The parties' counsel conferred over 4 months regarding the deficiencies in the corporate representative's testimony and were able to narrow down the dispute and tentatively agree that it could potentially be resolved through a declaration from the witness answering the few remaining questions Plaintiffs had about the topics, with Plaintiffs reserving all rights to seek a continued deposition of Mr. Grossman. *See* **composite Exhibit 2**, filed under seal (composite of conferral emails and letters). Instead of providing a draft of the declaration as requested by Plaintiffs' counsel, Wells Fargo served a signed and sworn declaration from a different bank employee to Plaintiffs' counsel on February 3, 2023, which flatly contradicted the sworn testimony provided by Mr. Grossman, Defendant's corporate representative – which had been relied upon by Plaintiffs' banking expert to opine on Wells Fargo's malfeasance.  *See* **Exhibit 6**, filed under seal (Dec. of Brian Fitzgerald). Despite continued exhaustive conferrals, the parties were unable to

resolve the dispute regarding the issues discussed herein. *See* **Ex. 2**, filed under seal (composite of conferral emails and letters).

**II. LEGAL STANDARD**

Rule 30(b)(6) serves to streamline the discovery process. *Great Am. Ins. Co. of N.Y. v. Vegas Constr. Co.*, 251 F.R.D. 534, 538 (D. Nev. 2008) (internal citation omitted). The rule allows a corporation to have more control by giving them the opportunity to designate and prepare a witness to testify on the corporation's behalf. *United States v. Taylor*, 166 F.R.D. 356, 360 (M.D.N.C 1996). This means, however, that the corporation must provide a witness that can answer questions regarding the subject matter contained in the notice. *Detoy v. City and County of San Francisco*, 96 F.R.D. 362, 366 (N.D. Cal 2000).

Rule 30(b)(6) requires that the witness that is testifying on the corporation's behalf review all matters known or reasonably available to it in preparation for the 30(b)(6) deposition. *Taylor*, 166 F.R.D. at 360. "Even if documents are voluminous and the review of those documents would be burdensome, the deponents are still required to review them in order to prepare themselves to be deposed." *Calzaturficio S.C.A.R.P.A. s.p.a. v. Fabiano Shoe Co., Inc.*, 201 F.R.D. 33, 37 (2001). Therefore, "corporate parties have an obligation to present witnesses who are capable of providing testimony on the noticed topics regardless of whether the information was in the witness's personal knowledge, provided that the information is reasonably available to the corporation." *Memory Integrity, LLC v. Intel Corp.*, 308 F.R.D. 656, 661 (2015). Once a corporation is put on notice of the areas of inquiry, they must prepare their witness to give "complete, knowledgeable, and binding answers on behalf of the corporation." *Id.* (quoting *Sprint Commc'ns Co. L.P. v. Theglobe.com, Inc.*, 236 F.R.D. 524, 527 (D.Kan.2006)) (internal quotation marks omitted). If a 30(b)(6) deponent cannot answer the questions within the subject matter of the notice, they fail to comply with Rule 30(b)(6). *See Marker v. Union Fidelity Life Ins. Co.*, 125 F.R.D. 121, 126 (M.D.N.C. 1989). Once

this occurs, the corporation has to designate a new designee who can answer the questions. *Id*. at 126.

Under Rule 30(a)(2)(A)(ii), where the parties have not stipulated to the deposition, a party must obtain leave of court to re-depose a person who has already been deposed in the same case. Fed. R. Civ. P. 30(a)(2)(A)(ii). Rule 30(a)(2) provides that "the court *must* grant leave to the extent consistent with Rule 26(b)(1) and (2)[.]" *Id.* (emphasis added). Pursuant to Rule 26(b):

> The guiding factors in this inquiry are whether:
>
> (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

*Alexander v. F.B.I.*, 186 F.R.D. 128, 133 (D.D.C. 1998) (citing Fed. R. Civ. P. 26(b)(2)). Moreover, Rule 37(a)(3) permits a party to "move for an order compelling an answer" in the event that "a deponent fails to answer a question asked under Rule 30[.]" Fed. R. Civ. P. 37(a)(3)(B)(i).

**III. ARGUMENT**

**A. WELLS FARGO'S CORPORATE REPRESENTATIVE, MICHAEL GROSSMAN, WAS NOT ADEQUATELY PREPARED TO ANSWER WHETHER ANY ADDITIONAL ALERTS EXISTED FOR THE MAZA-RELATED ACCOUNTS.**

Wells Fargo designated Mr. Michael Grossman to be their representative for the October 25, 2022 deposition. *See* **Ex. 5**, filed under seal (Grossman Dep. Tr. Excerpts). Mr. Grossman, however, was not adequately prepared by the Bank to answer questions for two crucial deposition topics—Topic 14, "[t]he alerts on incoming funds described in the Court's discovery order (ECF No. 80), including what account activity triggered each alert, who investigated or reviewed each

alert, how each alert was investigated and how each alert was cleared or closed[,]"[1] and Topic 38, "whether Wells Fargo employees received alerts regarding fraudulent activity on Maza's accounts (including any wire transfers), why such alerts would have been generated, and how they responded to such alerts."[2] **Ex. 4**, filed under seal (Notice of Oct. 25, 2022 Deposition). Specifically, Mr. Grossman was ██████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████

During the deposition of Mr. Grossman, Plaintiffs learned for the first time that ████ ████████████████████████████████████████████████████████████████ ███████████████████████████████████.[3] **Ex. 5** at 161:18-163:5, filed under seal (Grossman Dep. Tr. Excerpts) ("██████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████"); *see also id.* at 172:2-23. During the deposition, Mr. Grossman was ████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████████████████: ████████████████████████████████████████████████████████████████ ████████████████████████████████████████ ██

---

[1] Notably, Topic 14 was not the subject of either Plaintiffs' Sixth Motion to Compel or Defendant's Motion for Protection—it was among the topics to which Defendant Wells Fargo readily agreed to. *See* ECF Nos. 237 & 253.

[2] Topic 38 was one of the topics permitted by the Court in its ruling on Defendants' motion for protective order. *See* ECF No. 281 at 10.

[3] Plaintiffs learned during their conferrals that Wells Fargo had alluded to this fact in its response to Plaintiffs' Sixth Motion to Compel, but Plaintiffs did not realize that this meant that there were no AML alerts contained in the bank's production.



*Id.* at 295:22-297:8; *see also id.* at 175:15-176:12 ("█████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████"); *id.* 173:23-174:1 ("█████████████████████████████████████████████████████"). Mr. Grossman admitted, however, that ████████████████████████████████████████████. *Id.* at 176:7-11 ("███████████████████████████████████████████████████████").

Mr. Grossman's deposition also made clear ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ *See id.* at 154:10-16 ("████████████████████████████████████████████████████████████████████████████████████████



). Notably, pursuant to Wells Fargo's policies, if these transactions did generate an alert, ████████████████████████ ████████████████████████████ **Exhibit 7** at WF-00013308, filed under seal (WF-00013305). ███████████████████████ ████████████████████████████████. *Id.* The deposition, however, did not clarify whether ██████████████████████████████████████████████ ████████████████████████ – because Mr. Grossman ████████████████ ████████████ **Exhibit 5** at 295:22-297:8, filed under seal (Grossman Dep. Tr. Excerpts); *see also id.* at 175:15-176:12.

## II.   WELLS FARGO SUBMITS A DECLARATION FROM A DIFFERENT BANK EMPLOYEE WHOSE TESTIMONY FLATLY REFUTES GROSSMAN'S TESTIMONY.

In light of the deficiencies in Mr. Grossman's testimony and preparations, the parties' counsel conferred regarding either continuing the deposition or filling in the gaps in the testimony with a sworn declaration from Wells Fargo's corporate representative. *See* **Ex. 2**, filed under seal (composite of conferral emails and letters). Instead of providing a draft of a declaration and answering the specific questions propounded by Plaintiffs, Defendant submitted a signed and sworn declaration to Plaintiffs' counsel on February 3, 2023. **Ex. 6**, filed under seal (Dec. of Brian Fitzgerald); *see also* **Ex. 2** (composite of conferral emails and letters) (detailing the questions Plaintiffs requested be answered in the declaration).  The declaration that Wells Fargo produced, however, was sworn to by Mr. Brian Fitzgerald, who is a Financial Crimes Manager in the Financial Crimes Analytics, Monitoring, and Surveillance group, *see* **Ex. 6**, filed under seal (Dec. of Brian Fitzgerald), and not Mr. Grossman, who is a Business Execution Senior Manager with

approximately a decade of experience involving financial crimes. **Ex. 5** at 8:2-12:10, filed under seal (Grossman Dep. Tr. Excerpts).

The problems with Mr. Fitzgerald's declaration are two-fold. First, the declaration flatly refutes the testimony of Mr. Grossman regarding which system monitored the Maza-related accounts for money laundering activity. Specifically,



**Ex. 5** at 178:10-182:17, filed under seal (Grossman Dep. Tr. Excerpts); *see also id.* at 267:3-268:2

Incredibly, Mr. Fitzgerald attested to the exact opposite: that ███████ *never monitored Maza's accounts for AML issues*. See **Ex. 6**, filed under seal (Dec. of Brian Fitzgerald). According to Mr. Fitzgerald's sworn testimony, ████████████████████████████████ ████████████████████████████████████████████████████ which were not the Maza Wells Fargo accounts. *Id.* at ¶ 3. After Mr. Fitzgerald attests that ████████████ ███████████████████████████████████████████████████████████ ████████████████████████████████████████████████. Moreover, Mr. Fitzgerald's declaration fails to explain ██████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████ *Id.* at ¶¶ 3, 7.

In contrast, Mr. Grossman, unequivocally testified that ██████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████ **Ex. 5** at 295:22-297:8, filed under seal (Grossman Dep. Tr. Excerpts); *see also id.* at 175:15-176:12. Exacerbating matters, Wells Fargo has now represented in a letter that ██████████████████████████ ████████████████████████████████████████████████████████████ ███████ *See* **Ex. 2**, filed under seal (composite of conferral emails and letters).

_____

[4] Plaintiffs had mistakenly omitted ████████████████████████ from Mr. Grossman's Rule 30(b)(6) topics. The day prior to the deposition, Plaintiffs alerted Wells Fargo of this error, ██████████ ████████ At the deposition, Mr. Grossman testified that ████████████████████████ ████████████████████████████████████ *See* **Exhibit 8** at 13, filed under seal (Grossman Dep. Ex. 12).

Given these glaring, irreconcilable contradictions in these two Wells Fargo witnesses' sworn testimony, Plaintiffs request that these witnesses be deposed simultaneously since one of them appears to have committed perjury. These stark inconsistencies and omissions mandate a second limited deposition of Mr. Grossman and a deposition of Mr. Fitzgerald to allow Plaintiffs to meaningfully cross examine, to test the veracity and truthfulness of, and to reconcile the contradictory statements made by Mr. Grossman and Mr. Fitzgerald. *See Alexander v. F.B.I.*, 186 F.R.D. 128, 133 (D.D.C. 1998) ("The Court will grant plaintiffs leave to redepose Ickes insofar as they seek to interrogate him on the accuracy and truthfulness of the statement made in his declaration filed subsequent to his deposition as it relates to his search for documents at his Fire Island vacation home."). Pursuant to Rule 26(b), the continued deposition of Mr. Grossman is necessary, as the second deposition would clarify and reveal new, non-cumulative information that is solely in the Bank's possession and which Plaintiffs have not been able to obtain. *See Alexander*, 186 F.R.D. at 133 ("The guiding factors [pursuant to Rule 26(b)(2)] are whether: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." (citing Fed. R. Civ. P. 26(b)(2))). Moreover, the continued deposition would be consistent with Rule 26(b) considering the importance of the sought discovery, which has already been recognized by this Court. *See id.* Therefore, pursuant to Federal Rules 26(b)(2) and 30(a)(2), "the [C]ourt *must* grant leave" to redepose Mr. Grossman. Fed. R. Civ. P. 26(b)(2) & 30(a)(2)(A)(ii); *see also Vincent v. Mortman*, 2006 WL 726680, at *1–2 (D.Conn. Mar. 17, 2006) (permitting plaintiff to reopen

defendant's deposition when subsequent deposition of another witness contradicted defendant's deposition and medical records); *Keck v. Union Bank of Switzerland*, No. 94CIV.4912(AGS)(JCF), 1997 WL 411931, at *2 (S.D.N.Y. July 22, 1997) (granting motion to resume depositions due to "a disputed factual issue that warrant[ed] reopening the depositions of both" witnesses where one witness submitted affidavit conflicting with the deposition testimony of the other witness) ("Thus, the basis for Mr. Hasting's allegations [made in an affidavit] should be tested. No such accusation had been made prior to the initial depositions of Mr. Hasting and Mr. Masline, and so the request to reopen the questioning is based on new information. The discovery is not cumulative, and the burden of redeposing these two witnesses is outstripped by the potential importance of the issue."); *Flomo v. Bridgestone Am.'s Holding, Inc.*, No. l:06–cv–000627–WTL–JMS, 2009 WL 4728018, at *2 (S.D. Ind. Dec. 4, 2009) (permitting continued depositions to allow inquiry "into the circumstances under which Mr. Sulon's original and subsequent affidavits were obtained" where new affidavit conflicted with previously filed affidavit).

Second, aside from the apparent perjury committed by at least one of Wells Fargo's corporate representatives, the Fitzgerald declaration fails to cure the deficiencies in Mr. Grossman's testimony and fails to actually answer the questions Plaintiffs posed regarding whether any ███████████████████████████████████. Specifically, Plaintiffs prepared a draft declaration seeking answers to questions in connection with Topics 14 and 38 that Mr. Grossman was not adequately prepared to answer—namely, ████████ ████████████████████████████████ ████████████████████████████████ ███████████████████████. The (conflicting) Fitzgerald declaration fails to cure the inadequacies in Mr. Grossman's with respect to those two topics, thereby necessitating Mr. Grossman's continued Rule 30(b)(6) deposition. *See Navajo Nation v.*

*Urb. Outfitters, Inc.*, No. 12CV0195 LH/LAM, 2014 WL 11511453, at *3 (D.N.M. Nov. 24, 2014) ("Plaintiffs' attempt to supplement Mr. Dalgarito's testimony with written declarations does not cure their failure to designate an appropriate deponent or deponents for a Rule 30(b)(6) deposition. The Court, therefore, will grant Defendants' motion to compel and will order Plaintiffs to designate an adequately prepared Rule 30(b)(6) deponent or deponents to provide testimony on the 26 topics in the deposition notice.").

Moreover, the ███████████████████████████, fell squarely within the scope of the agreed-upon Topics 14 and 38, and Mr. Grossman was required to do more than just recite what was written on the ███████████████████.[5] He was required to conduct an independent investigation of whether any alerts – ████████████████████ – were generated by Maza's suspicious account activity. *Memory Integrity, LLC*, 308 F.R.D. at 661 ("Thus, [] rule [30(b)(6)] requires, if need be, that the responding party 'must prepare deponents by having them review prior fact witness deposition testimony as well as documents and deposition exhibits.'" (quoting *United States v. Taylor*, 166 F.R.D. 356, 362 (M.D.N.C.1996))); *Calzaturficio S.C.A.R.P.A. s.p.a..*, 201 F.R.D.at 37 ("The [30(b)(6) deponents] could have, and indeed were obligated to, review all corporate documentation that might have had a bearing on the 30(b)(6) deposition topics."). Indeed, this Court has already recognized that the production of any and all alerts generated for Maza-related accounts is crucial for Plaintiffs' case. In its August 11, 2021 Order, this Court compelled Wells Fargo to produce <u>all</u> **BSA/AML** alerts to Plaintiffs, "find[ing] that the limited alerts on incoming funds are relevant on their face to plaintiffs'

---

[5] As noted above, Topic 14 was not the subject of either Plaintiffs' Sixth Motion to Compel or Defendant's Motion for Protection—it was among the topics to which Defendant Wells Fargo readily agreed to, *see* ECF Nos. 237 & 253, and Topic 38 was one of topics specifically ordered by the Court for Wells Fargo to adequately prepare for and address at the Rule 30(b)(6) deposition, *see* ECF No. 281 at 10.

claims because they might show that Wells Fargo knew or should have known that incoming funds were fraudulent or suspicious." ECF No. 80 at 5-6, *accord* ECF No. 281 at 8. On September 13, 2022, in compelling the Bank to produce the Roles and Responsibilities Agreement on the Bank's monitoring, the Court noted that Plaintiffs had not yet "shown that Wells Fargo has failed to comply with this order" by failing to produce BSA/AML alerts. ECF No. 281 at 8.

That time has now come. Plaintiffs are now faced with irreconcilable testimony that severely prejudices their case (*see infra* at 9–12), and they are entitled to simultaneously depose both of Wells Fargo's corporate representatives to determine if Wells Fargo has truly produced all Maza-related AML alerts – which according to Plaintiffs' banking expert, Catherine Ghiglieri, ███

███. *See* **Exhibit 9** at ¶ 45, filed under seal (Dec. of Catherine A. Ghiglieri in Support of Pls.' Seventh Mot. to Compel). To be sure, while Wells Fargo has produced ███████ during discovery, Plaintiffs have good basis to question whether additional alerts, ███████ ███████, exist based on the account monitoring software utilized by the Bank and the account activity occurring in the Maza-related accounts. Based on her review of the transactions in the Maza-related accounts and based on her experience, Plaintiffs' expert witness, Ms. Catherine Ghiglieri, opined that ███████████████

███████████████ *See id.* at ¶ 16 (Dec. of Catherine A. Ghiglieri) (███

███████████████████

███████████████████

███████████████████

███████████████████

███████████████████

███████████.”); *see also id.* at ¶¶ 21, 25, 30, 37, 41, 43–44.

For example, ███████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

*Id.* at ¶ 18. Then, ████████████████████████████████

████████████████████████████████████ " *Id.* at ¶ 19. ██████████

█████████████████████████████████████████████████

██████████████████████████████████ *Id.* at ¶ 20. Based on this transactional

activity, Ms. Ghiglieri opined that ██████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████ *Id.* at ¶ 21.

Likewise—albeit relying on Mr. Grossman's apparently incorrect testimony that ████████

monitored the accounts for AML—in her expert report Ms. Ghiglieri opined that ██████████

████████████████████████████████████████████████████

███████████████████████████ ." **Exhibit 10** at 63, filed under seal (Relevant Excerpts of Expert

Report of Catherine A. Ghiglieri) (" ██████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████



Although based on Mr. Grossman's now seemingly inaccurate testimony, Ms. Ghiglieri's expert report highlighted several examples of transactions which would have alerted under the ▮▮▮▮ software, which she believes, as explained in her declaration, ▮▮▮▮. *See id.* at 285–86 ("▮▮▮▮

.”); *see also* **Ex. 9** at ¶ 21 (Dec. of Catherine A. Ghiglieri).

Yet, despite Ms. Ghiglieri's ▮▮▮▮ *see generally* **Ex. 9** (Dec. of Catherine A. Ghiglieri); **Ex. 10** at 199–200, 285–86, filed under seal (Relevant Excerpts of Expert Report of Catherine A. Ghiglieri), Wells Fargo has not produced any ▮▮▮▮ during this litigation. Based on this lack of produced alerts, Ms. Ghiglieri is of the opinion that

 **Ex. 9** at ¶ 45 (Dec. of Catherine A. Ghiglieri). It is Ms. Ghiglieri opinion that:

*Id.* Without sworn testimony on the record from Wells Fargo, however, neither Plaintiffs nor their expert can say with certainty why there is a lack ██████████████████.

Mr. Fitzgerald's declaration, unfortunately, did not clarify whether the Bank ████████ ████████████████████████████████. In fact, Mr. Fitzgerald's declaration, produced three months after Mr. Grossman's deposition (and conveniently after Wells Fargo had the benefit of Ms. Ghiglieri's report opining that ██████████████████████████), only raised more questions regarding which software (if any) actually monitored the Maza-related accounts for money laundering activity. It is essential for Plaintiffs' case that a Wells Fargo corporate representative testify regarding whether these ████████████████████ ████████████—not only so that Plaintiffs can understand what Wells Fargo actually knew about the suspicious activity occurring in the Maza-related accounts, but also so that Plaintiffs' expert may render a comprehensive and knowledgeable opinion about the account activity and Wells Fargo's conduct.

In addition, as a result of Mr. Fitzgerald's (conflicting) sworn statement that ████████ did not monitor the Maza-related accounts for AML, Plaintiffs respectfully request that the Court compel Defendant Wells Fargo to produce the user guides for the systems which the Bank represents did monitor the Maza-related accounts for AML—namely, ████████████████

██████████████████████████████████████████████████████

██████████████████████████ *See* **Ex. 2**, filed under seal (composite of conferral emails and letters). In its January 31, 2022 Order on Plaintiffs' Motion for Reconsideration, the Court compelled Defendant to produce the user guides for ███████████████████████████ systems sought by Plaintiffs' Request for Production No. 56, which asked for "all policies and procedures relating to automated account monitoring systems designed to identify suspicious activity utilized by Wells Fargo, including the User Guides for each system, and investigative protocols required for the Bank Secrecy Act analysts." ECF No. 200 at 2. As with the compelled user guides for ████████████ ████████████████, the user guides for ███████████████████████████████████ ███████████████████████████████████████████████████████ (should) "contain information as to Wells Fargo's capability for suppression." *Id.* If, as the Bank represents, █████████████████████████████████████████████████████ ████████████████████████████████████ "Plaintiffs should be able to test that contention[.]" *Id.* Therefore, Plaintiffs respectfully request that the Court compel the production of these AML software user guides for the relevant time period from 2014 to 2019. *Cf. Grange v. Mylan Lab'ys, Inc.,* No. 1:07-CV-00107, 2010 WL 11569488, at *2 (D. Utah May 17, 2010) (granting motion to compel production where witness submitted contradictory post-

_____

[6] Plaintiffs have alerted Wells Fargo that it produced the incorrect ████████ User Guide in response to this Court's Order, and even provided the name of the correct ████████ User Guide, "████████ ██████████████████████████." **Ex. 9** at ¶ 49 (Dec. of Catherine A. Ghiglieri). After Wells Fargo switched its testimony on ████████ being the AML monitoring software for Maza's accounts, it refused to produce this correct User Guide. Wells Fargo should be required to do so now in advance of the depositions so Plaintiffs can cross-examine the corporate representatives on why they have offered irreconcilable testimony on ████████ monitoring (or not monitoring) Maza's accounts at the Bank for AML.

deposition declaration stating that "his 'testimony was mistaken'" because "he was 'very nervous' and 'could not concentrate'" during the deposition).[7]

Furthermore, pursuant to Rule 37(a)(5), Plaintiffs respectfully request that the Court award Plaintiffs their fees and costs incurred in bringing this motion and require that Defendant pay the costs of the continued Rule 30(b)(6) depositions. Fed. R. Civ. P. 37(a)(5); *see also Navajo Nation*, 2014 WL 11511453 at *3 (ordering "that [the non-moving party] should pay [the movants'] costs and fees incurred in bringing th[e] motion [to compel] and in taking the second Rule 30(b)(6) deposition" where the non-moving party "d[id] not cure their failure to designate an appropriate deponent or deponents for a Rule 30(b)(6) deposition" with post-deposition declaration). Defendant's refusal to provide Mr. Grossman and Mr. Fitzgerald for a continued deposition in light of their conflicting testimony is not substantially justified. Even if Mr. Grossman was indeed mistaken (███████████████████████████████████████████████), and Mr. Fitzgerald's declaration accurately corrected the (mistaken) testimony, Plaintiffs are entitled to cross-examine the witnesses to test the veracity of their representations, and to clarify the record and facts so that they and their expert witnesses can confidently rely on the same. Under the circumstances, and in light of the parties' extended, good-faith conferrals, an

---

[7] The *Grange* court further explained: "Of additional concern is the **conflicting** testimony regarding the alleged contents of the box and whether or not the box is still in Mr. Grange's possession or has in fact been turned over to his attorneys. **Such conflict does not defeat the motion to compel, but instead only underscores the need for production** of the box so that the contents thereof may be inspected. Accordingly, the Court hereby grants defendants' motion to compel. Mylan's request for production of the box is consistent with plaintiffs' general duty to disclose information that is relevant to this litigation and the claims and defenses presented. Furthermore, **given the conflicting information provided in the document request, deposition and declaration** the Court finds it is appropriate for plaintiffs to produce any boxes in their possession that may be responsive to defendants' requests." (emphasis added) (footnotes omitted)). *Id.*

award of costs of deposing the two witnesses would be just and fair. Fed. R. Civ. P. 37(a)(5); *see also Navajo Nation*, 2014 WL 11511453 at *3.

Lastly, in light of Defendant's failure to cure the purported inaccuracy in Mr. Grossman's testimony prior to the deadline for Plaintiffs' expert disclosures and the resulting inaccuracies in Ms. Ghiglieri's report, Plaintiffs respectfully request that the Court award Plaintiffs the additional expert fees necessary to amend and correct Ms. Ghiglieri's report. *See* **Ex. 10** at 199–200, filed under seal (Relevant Excerpts of Expert Report of Catherine A. Ghiglieri ) ("

."). The parties began conferring regarding Mr. Grossman's deposition almost immediately after his deposition in late-October 2022. **Ex. 2** (composite of conferral emails and letters). And, in fact, the parties narrowed down the disputed topics to the AML alert existence by late-December 2022. *Id.* Despite this, Defendant did not produce Mr. Fitzgerald's declaration seemingly correcting Mr. Grossman's mistake until two days after Plaintiffs' expert report were served. The Court should not tolerate Defendant's attempt to undercut Plaintiffs' expert report by withholding information until after the deadline, thereby depriving Plaintiffs of the ability to put forth a comprehensive and accurate report. Under these circumstances, it would be fair and just to award the expert fees necessary to amend Ms. Ghiglieri's report, if necessary, to alleviate the burden on Plaintiffs caused by Wells Fargo's dilatory disclosure of information. *Salas v. Brigham*, No. CIV 08-1184 JB RLP, 2010 WL 4322622, at *10 (D.N.M. Oct. 6, 2010) ("The Court finds that BCC should pay the cost that the expert has charged, if any, only for rewriting any portion of the original expert report because he or she did not have the audit reports earlier. The Court believes

that this reimbursement of cost may be minimal, but if L. Salas wants BCC to pay the cost, she should serve and, if no agreement is reached, file an affidavit from the expert that sets forth the cost of amending the report that L. Salas incurred because BCC did not produce the audit reports at an earlier time and because the belated production caused the expert to rewrite a portion of the expert report.").

### IV. CONCLUSION

In light of the contradicting sworn statements by Wells Fargo's representatives and the outstanding questions regarding the monitoring of Maza's accounts and existence of AML alerts, Plaintiffs respectfully request that Defendant Wells Fargo be compelled (1) to provide Mr. Grossman for a continued deposition on Topics 14 and 38 to testify to which software monitored Maza's accounts for money laundering activity, to provide examples of transactions for which they would have alerted, to confirm whether any additional alerts, including AML alerts, ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and that Mr. Grossman be required to independently verify this information at Wells Fargo rather than relying solely on the documents provided by Defendant's counsel; and (2) to provide Mr. Fitzgerald for a deposition to cross-examine him on his sworn February 2, 2023 declaration. In advance of the depositions, Plaintiffs also request that the Court compel Wells Fargo to produce the user guides for the ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ systems for the 2014 to 2019 time periods. Plaintiffs further respectfully request that the Court permit Plaintiffs' expert to supplement her reports to the extent necessary in light of any new information learned as a result of the depositions. Lastly, Plaintiffs respectfully request that the Court sanction Defendant Wells Fargo under Rule 37(a)(5) and order the Bank to pay the fees incurred by Plaintiffs in bringing this Motion, as well as the costs and fees incurred in

deposing Mr. Grossman and Mr. Fitzgerald, and the expert fees associated with amending Ms. Ghiglieri's report after the depositions make clear which AML software monitored Maza's accounts.

Dated this 14th day of April 2023.

SGRO & ROGER

 /s/ Colleen N. Savage, Esq.
ANTHONY P. SGRO
COLLEEN N. SAVAGE
**SGRO & ROGER**
720 S. 7th Street, 3rd Floor
Las Vegas, Nevada 89101

AND

JEFFREY W. GUTCHESS (*Admitted Pro Hac Vice*)
COURTNEY CAPRIO (*Admitted Pro Hac Vice*)
JOANNA NIWOROWSKI (*Admitted Pro Hac Vice*)
AMANDA SUAREZ (*Admitted Pro Hac Vice*)
**AXS LAW GROUP, PLLC**
2121 NW 2nd Avenue, Suite 201
Miami, Florida 33127

*Attorneys for Plaintiffs*

**INDEX OF EXHIBITS**

| 1 | Declaration of C. Caprio |
|---|---|
| 2 | Composite of Conferral Emails and Letters (Filed Under Seal) |
| 3 | WF-9609 (Filed Under Seal) |
| 4 | Notice of Oct 25, 2022 Dep. (Filed Under Seal) |
| 5 | Grossman Dep. Transcript (Filed Under Seal) |
| 6 | Fitzgerald Declaration (Filed Under Seal) |
| 7 | WF-13305 (Filed Under Seal) |
| 8 | Grossman Dep. Ex. 12 (Filed Under Seal) |
| 9 | Declaration of C. Ghiglieri (Filed Under Seal) |
| 10 | Excerpts of Expert Report of C. Ghiglieri (Filed Under Seal) |

## CERTIFICATE OF SERVICE

I certify that I am an employee of Sgro & Roger and that on the 14th day of April, 2023, service of the foregoing **PLAINTIFFS' SEVENTH MOTION TO COMPEL 30(b)(6) DEPOSITION REGARDING AML ALERTS AND AML SOFTWARE USER GUIDES** was made by mandatory electronic service through the United States District Court's electronic filing system and/or by depositing a true and correct copy in the U.S. Mail, first class postage prepaid, and addressed to the following at their last known address:

JEFFREY WILLIS
RICHARD S. GORDON
ERICA J. STUTMAN
HAYLEY J. CUMMINGS
GREGORY J. MARSHALL
JACOB C. JONES
**SNELL & WILMER**
3883 Howard Hughes Pkwy., Ste. 1100
Las Vegas, NV 89169

Email : JWillis@swlaw.com
RGordon@swlaw.com
EStutman@swlaw.com
HCummings@swlaw.com
GMarshall@swlaw.com
JCJones@swlaw.com

*Attorneys for Defendant*
WELLS FARGO BANK, N.A.

JEFFREY WILLIS
ERICA J. STUTMAN
HAYLEY J. CUMMINGS
**SNELL & WILMER**
3883 Howard Hughes Pkwy., Ste. 1100
Las Vegas, NV 89169

Email : JWillis@swlaw.com
EStutman@swlaw.com
HCummings@swlaw.com

*Attorneys for Defendant*
KATHERINE DARRALL

REX D. GARNER
MARK J. CONNOT
**FOX ROTHSCHILD, LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, NV 89135

Email : MConnot@foxrothschild.com
RGarner@foxrothschild.com

*Attorneys for Defendant*
JOSE RICO

 */s/ Alexis Williams*
Employee of Sgro & Roger