MARK J. CONNOT (SBN 10010)
COLLEEN E. MCCARTY (SBN 13186)
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
mconnot@foxrothschild.com
cmccarty@foxrothschild.com
*Attorneys for Defendant, Jose Rico*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ANDREW D. ZARON, solely in his capacity as the Court-Appointed Receiver of JAMA INVESTMENT GROUP, INC., MAURICIO JASSO, GUILLERMO SESMA, SYLVIA MARTINEZ SALINAS, BELISARIO JASSO BALDINI, JAVIER RAMIREZ LARES, ANTONIO BACHALANI, RODRIGO FERNANDEZ, JUAN ROMERO and BERNARDO VILLACECIAS, <br><br> Plaintiffs, <br><br> vs. <br><br> WELLS FARGO BANK, N.A., KATHERINE DARRALL, and JOSE RICO, <br><br> Defendants. | Case No. 2:20-cv-00858-CDS-BNW <br><br> **DEFENDANT JOSE RICO'S MOTION FOR SUMMARY JUDGMENT** <br><br> **Oral Argument Requested** |

Defendant Jose Rico ("Mr. Rico"), by and through his attorneys of record, Mark J. Connot and Colleen E. McCarty of the law firm Fox Rothschild LLP, hereby moves for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure ("FRCP"), on all claims asserted by Plaintiffs in their Complaint filed in state court on May 4, 2020 and subsequently removed to this Court on May 12, 2020 [ECF No. 1].

This motion for summary judgment ("Motion") is supported by the following points and authorities, the pleadings and papers on file with the Court, the evidence set forth in the

i

147682675.2

accompanying declaration of Colleen E. McCarty attached as **Exhibit A** and the exhibits submitted therewith, and any oral argument and testimony the Court may permit at a hearing of this matter.

Dated this 28th day of July 2023.

**FOX ROTHSCHILD LLP**


*/s/ Colleen E. McCarty*
MARK J. CONNOT (SBN 10010)
COLLEEN E. MCCARTY (SBN 13186)
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
*Attorneys for Defendant, Jose Rico*

ii

147682675.2

**Table of Contents**

Page

I. INTRODUCTION ..................................................................................................... 1

II. STATEMENT OF UNDISPUTED MATERIAL FACTS ......................................... 2

III. ARGUMENT ......................................................................................................... 6

A.    Legal Standard for Summary Judgment. ................................................. 6

B.    Plaintiffs Cannot Prevail On Any Claim Against Mr. Rico Absent a Calculation of Damages Specific to Mr. Rico Individually. .......................................... 7

C.    Mr. Rico Is Further Entitled to Summary Judgment on the Causes of Action 2 – Negligence, 3 – Aiding and Abetting Breach of Fiduciary Duty, and 7 – Civil Conspiracy Where Plaintiffs Lack Significantly Probative Evidence of an Essential Element of Each Claim. ........................................................... 9

1.    Plaintiffs' Cause of Action 2 – Negligence Fails as a Matter of Law Because Mr. Rico Did Not Owe Plaintiffs a Duty of Care. ....................................... 10

2.    Plaintiffs Cause of Action 3 – Aiding and Abetting Breach of Fiduciary Duty Also Fails as a Matter of Law Because Plaintiffs Have No Significantly Probative Evidence That Mr. Rico Knowingly Participated in Maza's Alleged Breach of Fiduciary Duty. ..................................................... 11

3.    Plaintiffs' Cause of Action 7 – Civil Conspiracy Fails as a Matter of Law Because Mr. Rico Could Not Conspire With Wells Fargo Under the Intracorporate Conspiracy Doctrine, and Plaintiffs Have No Significantly Probative Evidence That Mr. Rico Conspired With Maza. .......................... 12

D.    Mr. Rico Is Entitled to Summary Judgment on Plaintiffs' Prayer for Punitive Damages. ................................................................................. 14

IV. CONCLUSION ...................................................................................................... 16

147682675.2

**Table of Authorities**

**Page(s)**

**Cases**

*Allstate Ins. Co. v. Nassiri*,
2011 WL 2977127 (D. Nev. July 21, 2011) ................................................................................8

*In re Amerco Derivative Litig.*,
127 Nev. 196, 252 P.3d 681 (2011) .......................................................................................12

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986).................................................................................................................6, 7

*Barmettler v. Reno Air, Inc.*,
114 Nev. 441, 956 P.2d 1382 (1998) ......................................................................................7

*Bhan v. NME Hosps., Inc.*,
929 F.2d 1404 (9th Cir. 1991) ................................................................................................7

*Bongiovi v. Sullivan*,
122 Nev. 556, 138 P.3d 433 (2006) .......................................................................................15

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986).................................................................................................................6

*Collins v. United Federal Sav. & Loan Ass'n*,
99 Nev. 284, 662 P.2d 610 (1983) .........................................................................................13

*Countrywide Home Loans, Inc. v. Thitchener*,
124 Nev. 725, 192 P.3d 243 (2008) .......................................................................................15

*Dickerson v. Alachua Cnty. Comm'n*,
200 F.3d 761 (11th Cir. 2000) ...............................................................................................13

*Dunham Tr. Co. as Tr. of Darrell N. Garmann Testamentary Tr. 2012 v. Wells
Fargo Bank, N.A.*,
2019 WL 489095 (D. Nev. Feb. 7, 2019) ...............................................................................11

*Dussouy v. Gulf Coast Inv. Corp.*,
660 F.2d 594 (5th Cir. 1981) ..................................................................................................13

*ePlus Tech., Inc. v. Aboud*,
313 F.3d 166 (4th Cir. 2002) ..................................................................................................13

*First Interstate Bank v. Jafbros Auto Body*,
106 Nev. 54, 787 P.2d 765 (1990)..........................................................................................15

*Giles v. General Motors Corp.*,
494 F.3d 865 (9th Cir. 2007) ..................................................................................................10

iv

*Guild v. First Nat. Bank of Nevada,*
   92 Nev. 478, 553 P.2d 955 (1976) ...................................................................................11

*J.D.H. v. Las Vegas Metro. Police Dep't,*
   2016 WL 5346068 (D. Nev. Sept. 23, 2016) .....................................................................7

*Jackson v. United Artists Theatre Circuit, Inc.,*
   278 F.R.D. 586 (D. Nev. 2011).......................................................................................8, 9

*Kaiser Cement Corp. v. Fishbach & Moore, Inc.,*
   793 F.2d 1100 (9th Cir. 1986) ...........................................................................................7

*Kerr v. Bank of America, N.A.,*
   2016 WL 54670 (D. Nev. Jan. 5, 2016).............................................................................10

*Land Baron Inv. v. Bonnie Springs Family LP,*
   131 Nev. 686, 356 P.3d 511 (2015) ....................................................................................7

*Maduike v. Agency Rent-a-Car,*
   114 Nev. 1, 953 P.2d 24 (1998) ........................................................................................15

*Malpiede v. Townson,*
   780 A.2d 1075 (Del. 2001) ...............................................................................................12

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
   475 U.S. 574 (1986).............................................................................................................7

*New England Life Ins. Co. v. Lee,*
   2015 WL 1413391 (D. Nev. Mar. 27, 2015) .....................................................................12

*Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.,*
   210 F.3d 1099 (9th Cir. 2000) ........................................................................................6, 9

*Orr v. Bank of Am.,*
   285 F.3d 764 (9th Cir. 2002) ..............................................................................................7

*Sanchez v. Wal-Mart Stores, Inc.,*
   125 Nev. 818, 221 P.3d 1276 (2009) ................................................................................10

*Selman v. Am. Sports Underwriters, Inc.,*
   697 F.Supp. 225 (W.D. Va. 1988) ....................................................................................13

*Silver State Broad., LLC v. Beasley FM Acquisition,*
   No. 2:11-cv-01789-APG-CWH, 2016 WL 320110 (D. Nev. Jan. 25, 2016) .....................8

*Silver State Broad., LLC v. Bergner,*
   705 Fed. App'x. 640 (9th Cir. 2017) ..................................................................................8

*United States v. Hughes Aircraft Co.,*
   20 F.3d 974 (9th Cir. 1994) ..............................................................................................13

147682675.2

**Statutes**

NRS 42.001 ...................................................................................................................15

NRS 42.005 ...................................................................................................................15

**Other Authorities**

Fed. R. Civ. P. 26 .............................................................................................................8

Fed. R. Civ. P. 56 .............................................................................................................6

LR 56-1 .............................................................................................................................2

147682675.2

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**INTRODUCTION**

It is an undisputed fact that Mr. Rico's first dealings of any kind with Daniel Maza Noriega ("Maza") were in August 2018. ECF No. 1-1 ("Compl.) ¶ 53. It is further undisputed that, as Plaintiffs put it, "Maza's fraud was discovered and collapsed" a short, six months later when, on February 19, 2019, Mauricio Jasso, a 50% owner of JAMA Investment Group, Inc. ("JAMA"), demanded to see and ultimately discovered the negative account balances of Maza's real estate investment company, First Prime Management, Inc. ("FPM"). Compl. ¶¶ 16, 134-137. It was, however, as early as the "summer of 2018 [when] two things happened that would disrupt Maza's fraud and ultimately unravel his scheme." Compl. ¶ 76. And, by that time, all of the original investments and reinvestment of "profits" by Plaintiffs into the FPM accounts were complete, and "Maza's conversion had depleted the FPM accounts to close to nothing." Compl. ¶ 81-82.

Although significant discovery has taken place, and Plaintiffs have disclosed both a banking expert and a damages expert, it remains undisputed that the most Plaintiffs can prove is that Mr. Rico's actions occurred only after all investments had been made and Maza's scheme was already unraveling. The significance of this becomes most obvious when the Court reviews Plaintiffs' damages disclosures and sees they include only global disclosures directed toward the entirety of the time Maza banked with Defendant, Wells Fargo Bank, N.A. ("Wells Fargo") and have absolutely no disclosures specific to Mr. Rico. As discussed herein, this absence of the essential element of damages is fatal to all of Plaintiffs' causes of action against Mr. Rico and warrants granting of the instant Motion in its entirety. The further absence of substantially probative evidence of an essential element of each of Plaintiffs' specific causes of action for 2 – Negligence, 3 – Aiding and Abetting Breach of Fiduciary Duty, and 7 – Civil Conspiracy, as discussed below, warrants dismissal of these claims in the alternative.

1

147682675.2

## II.

## STATEMENT OF UNDISPUTED MATERIAL FACTS[1]

Pursuant to LR 56-1, Mr. Rico submits the following concise statement setting forth each fact material to the disposition of this motion that he contends is not genuinely at issue.

### Mr. Rico's Employment With Wells Fargo

1.    Mr. Rico began employment with Wells Fargo in 2014 in the position of Personal Banker 1. **Exh. A-1** at 4:24. In this role, Mr. Rico primarily assisted customers with opening and closing accounts and basic customer service related to those accounts. *Id.* at 4:25-26.

2.    In early 2017, Mr. Rico became a Personal Banker 2. **Exh. A-1** at 4:25-26. In this capacity, he assisted persons believed to be high-wealth individuals with opening and servicing accounts. *Id.* at 4:22-23.

3.    In mid-2018, Mr. Rico became a licensed Personal Banker 2. **Exh. A-1** at 5:1. This role was similar to that of Personal Banker 2, with added clearance to inquire regarding client investments and to offer referrals to financial advisors. *Id.* at 5:2-3.

### Mr. Rico's Late Entry Into the Alleged Misconduct of Wells Fargo

4.    In August 2018, Mr. Rico began handling account transactions for Daniel Maza ("Maza"). Compl. ¶ 53; *see also* **Exh. A-2** at 20:20-21 to 21:305.

5.    By that time, "in summer of 2018, two things happened that would disrupt Maza's fraud and ultimately unravel his scheme." Compl. ¶ 76. And, all of the original investments and reinvestment of "profits" by Plaintiffs into the FPM accounts were complete, and "Maza's conversion had depleted the FPM accounts to close to nothing." Compl. ¶ 81-82.

6.    Brian Monzon, Mr. Rico's branch manager at the time, introduced Mr. Rico to Lucy Herrera ("Herrera"). **Exh. A-2** at 11:12-25. Herrera worked for Maza as his personal assistant. **Exh. A-3** at 76:1. Herrera introduced Maza to Mr. Rico. **Exh. A-2** at 11:15-25 and 12:25 to 13:1-2.

---

[1] For purposes of this Motion, Mr. Rico cites, in part, to allegations made in the Complaint. This should not be construed as an admission of the veracity of the allegations contained therein; however, even assuming the allegations contained in the Complaint are true, Mr. Rico is still entitled to judgment as a matter of law in his favor.

2

147682675.2

7.      Mr. Rico communicated via email and text message with Herrera in her capacity as Maza's personal assistant. **Exh. A-4**.

8.      Ms. Herrera admitted fabricating and sending email communications in Mr. Rico's name. **Exh. A-3** at 206:2-8.

9.      In January, 2019, Herrera transferred to two tickets via StubHub for the Calibash concert in Las Vegas to Mr. Rico on Maza's behalf. **Exh. A-5** at 9:6-9, 12:1-5.

10.     On February 19, 2019, Jasso demanded to see and ultimately discovered the negative account balances of FPM. Compl. ¶¶ 134-137.

11.     In March 2019, Wells Fargo ended its customer relationship with Maza and closed all related business accounts. **Exh. A-6** at 178:22-25 to 179:1.

**Plaintiffs Did Not Disclose a Calculation of Damages Specific to Mr. Rico**

12.     For each of their claims, Plaintiffs make the same damages statement, i.e., allegations. Plaintiffs assert, "Without Wells Fargo's opening of Maza's accounts in the first instance, concealment, and facilitation of Maza's fraud, Plaintiffs would not have been defrauded of over $25 million – and would not have 'reinvested' approximately $15 million in 'profits.'" Compl. at ¶ 14.

13.     Plaintiffs state the relevant time period of the alleged "fraudulent scheme orchestrated by Wells Fargo and Maza" to be "[f]rom approximately mid-2013 to April 2019." Compl. at ¶ 14. Plaintiffs, however, place Mr. Rico's first involvement of any kind with the Maza accounts "[i]n summer 2018" when "[Brian] Apple appointed Rico to be FPM and Maza's banker, instructing Rico that these were 'VIP' accounts, and that they always brought new customers to the bank." Compl. at ¶ 53.

14.     During discovery, Plaintiffs did not disclose a calculation of damages specific to the alleged misconduct of Mr. Rico for the limited time period of August 2018 to February 2019. Instead, in their initial disclosures, disclosed July 22, 2020, Plaintiffs generally stated:

> Plaintiffs claim approximately $24.1 million in compensatory damages, an additional $72.3 million in punitive damages pursuant to Nevada law, and pre and post-judgment interest.

3

147682675.2

**Exh. A-7** at 9:17-23.

15.    Plaintiffs supplemented their initial disclosures thereafter eight times, and disclosed multiple expert reports, but none of these supplemental disclosures contains the computation of each category of damages claimed by Plaintiffs against Mr. Rico. **Exh. A-8** at 154:21-28 to 156:1-4.

16.    Specifically, in their eighth amended initial disclosure, disclosed less than 30 days ago on July 5, 2023, Plaintiffs itemized alleged damages as to each Plaintiff, as follows:

> **Plaintiffs claim $13,119,935.48 in compensatory damages to JAMA Investment Group, Inc., which is computed as follows: $655,979.00 for non-party investors of JAMA Investment Group, Inc.; $2,462,825.00 in damages for Sylvia M. Salinas Jasso; $4,341,836.54 for Guillermo Sesma Suarez; $3,007,555.52 for Javier Ramirez; $200,000.00 for Bernardo Villacecias; $1,183,212.42 for Rodrigo Fernandez; $1,091,027.00 for Belisario Jasso Baldini; and $177,500.00 for Juan Romero.**
>
> **Additionally, Plaintiff Sylvia M. Salinas Jasso also claims $385,983.20 in consequential damages for interest paid to a third-party for a loan. Plaintiff Antonio Bachaalani claims $1,502,749.08 in compensatory damages.**
>
> **The total compensatory and consequential damages Plaintiffs seek is $15,008,667.76, shown below if based on an award to (1) the parties individually and to JAMA Investment Group, Inc. for the non-party investors, and (2) to JAMA Investment Group, Inc. for all the investors and Plaintiff Antonio Bachaalani:**

| Investor | Plaintiff Net Amount | JAMA Net Amount (Excluding Individual Plaintiffs) | JAMA Net Amount |
|---|---|---|---|
| Sylvia M. Salinas Jasso | $2,462,825.00 | - | $2,462,825.00 |
| Daniel Antonio Martinez Serrano | - | $144,479.00 | $144,479.00 |
| Guillermo Sesma Suarez | $4,341,836.54 | - | $4,341,836.54 |
| Javier Ramirez | $3,007,555.52 | - | $3,007,555.52 |
| Bernardo Villacecias | $200,000.00 | - | $200,000.00 |
| Rodrigo Fernandez | $1,183,212.42 | - | $1,183,212.42 |
| Belisario Jasso Baldini | $1,091,027.00 | - | $1,091,027.00 |
| Hector M. Ibarra Castellano | - | $501,500.00 | $501,500.00 |
| Juan Romero | $177,500.00 | - | $177,500.00 |

4

147682675.2

| | | | | |
|---|---|---|---|---|
| Valery Voytsekhovich | - | $10,000.00 | | $10,000.00 |
| **Total Net Investments Without Bachaalani** | **$12,463,956.48** | **$655,979.00** | | **$13,119,935.48** |
| | | | | |
| Antonio Bachaalani | $1,502,749.08 | - | | $1,502,749.08 |
| **Total Net Investments With Bachaalani** | **$13,966,705.56** | **$655,979.00** | | **$14,622,684.56** |
| | | | | |
| **Total Plaintiffs' and JAMA's Net Amounts in Bour Reports** | **$14,622,684.56** | | | **$14,622,684.56** |
| | | | | |
| Sylvia M. Salinas Jasso Consequential Damages | $385,983.20 | | | $385,983.20 |
| | | | | |
| **Total Damages Claim** | **$15,008,667.76** | | | **$15,008,667.76** |

**These amounts, excluding the Plaintiff Sylvia M. Salinas Jasso claim of $385,983.20, were calculated by Plaintiffs' damages expert, Ms. Marcie Bour, in her expert and rebuttal reports.**

**Plaintiffs additionally seek $45,026,003.28 in punitive damages pursuant to Nevada law, and pre- and post-judgment interest.**

**Exh. A-8** at 154:21-28 to 156:1-4 (emphasis in original). Although Plaintiffs computation of damages spanned nearly two pages, Plaintiffs did not identify damages attributable to any Defendants individually. *Id.*

17.     Plaintiffs retained Marcie Bour of Yip Associates, a forensic accounting and financial investigations firm, to quantify their alleged damages. **Exh. A-9**. Ms. Bour also failed to designate damages attributable to Mr. Rico. *Id*. Ms. Bour specifically stated during her deposition that she in no way opined regarding whether Plaintiffs' alleged losses were attributable to Defendants, inclusive of Mr. Rico, in pertinent part:

Q:    And nowhere in your report is there anything that should be construed as an opinion that Wells Fargo or the other two Defendants [Ms. Darrall and Mr. Rico] caused the losses that are being claimed by the former investors, correct?

. . .

A:    Correct, I'm relying on the banking expert with regard to causation.

Q:    And so what you're saying in your opinion if liability is established and if causation is established then in your opinion an appropriate measure of

5

147682675.2

damages would be what we described as the net loss of the investors in the scheme whether it was Ponzi or not?

. . .

Q:    Is that a fair statement?

A:    In this case, yes.

**Exh. A-10** at 43:25 to 44:16.

18.    Likewise, the above-referenced banking expert referred to by Ms. Bour, Catherine Ghiglieri, did not offer a specific damages calculation as to Defendants individually, nor did she opine as to an amount of damages assignable to Mr. Rico. **Exh. A-11**.

**III.**

**ARGUMENT**

**A.    Legal Standard for Summary Judgment.**

A motion for summary judgment is appropriate and should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment should not be viewed as "a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole…." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). As the moving party, a defendant has the initial burden to show the absence of a genuine issue of fact concerning the grounds raised in the motion for summary judgment. *Celotex Corp.*, 477 U.S. at 325. "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the non-moving party's claim or defense or show that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the defendant satisfies the burden under FRCP 56, the burden shifts to the plaintiff who "may not rest upon mere allegations or denials of [the] pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for

6

147682675.2

a jury to return a verdict for that party. If the is merely colorable or is not sufficiently probative, summary judgment may be granted." *Id.*, 477 U.S. at 249-50.

When evaluating a motion for summary judgment, the court views all facts and draws all inferences in the light most favorable to the non-moving party. *See, e.g., Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). Nevertheless, the non-moving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). Importantly, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Here, Plaintiffs will be unable to overcome the legal and factual infirmities of their claims.

**B.      Plaintiffs Cannot Prevail On Any Claim Against Mr. Rico Absent a Calculation of Damages Specific to Mr. Rico Individually.**

Mr. Rico is entitled to summary judgment in his favor because Plaintiffs cannot prevail on any claim in the absence of the essential element of damages. Courts have long held that "[w]here an essential element of a claim for relief is absent, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial and summary judgment is proper." *J.D.H. v. Las Vegas Metro. Police Dep't*, 2016 WL 5346068, at *7 (D. Nev. Sept. 23, 2016) (internal quotations omitted); *Land Baron Inv. v. Bonnie Springs Family LP*, 131 Nev. 686, 696, 356 P.3d 511, 518 (2015) (summary judgment is appropriate if a party "has not provided evidence of [an] essential element"); *Barmettler v. Reno Air, Inc.*, 114 Nev. 441, 447, 956 P.2d 1382, 1386 (1998) ("[w]here an essential element of a claim for relief is absent, the facts, disputed or otherwise, as to other elements are rendered immaterial and summary judgment is proper).

Fatal here, Plaintiffs did not disclose a computation or calculation of damages related to Mr. Rico's purported late entry into Wells Fargo's alleged concealment and facilitation of

7

147682675.2

Maza's fraud. In their Initial Disclosures, which required them to provide a computation of damages, they stated:

> Plaintiffs claim approximately $24.1 million in compensatory damages, an additional $72.3 million in punitive damages pursuant to Nevada law, and pre and post-judgment interest.

**Exh. A-7** at 9:17-23. But pursuant to FRCP 26 (a)(1)(A)(iii), a party must, without the necessity of a discovery request, provide:

> a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered….

(emphasis added); *Jackson v. United Artists Theatre Circuit, Inc.*, 278 F.R.D. 586, 593 (D. Nev. 2011). "The word 'computation' contemplates some analysis beyond merely setting forth a lump sum amount for a claimed element of damages." *Allstate Ins. Co. v. Nassiri*, 2011 WL 2977127, at *4 (D. Nev. July 21, 2011). Additionally, the party seeking damages must "timely disclose its theory of damages" as well as the "basic method or formula by which it contends its damages should or will be calculated even if it cannot identify the specific dollar amount of damages pending further discovery." *Silver State Broad., LLC v. Beasley FM Acquisition*, No. 2:11-cv-01789-APG-CWH, 2016 WL 320110, at *2 (D. Nev. Jan. 25, 2016), aff'd sub nom. *Silver State Broad., LLC v. Bergner*, 705 Fed. App'x. 640 (9th Cir. 2017)). A "plaintiff's computation of damages should provide sufficient detail to enable the defendants to understand the contours of their potential exposure and make informed decisions regarding settlement and discovery." *Allstate Ins. Co.*, 2011 WL 2977127 at *4.

Despite supplementing their initial disclosures eight times, with the most recent supplement disclosed on July 5, 2023, Plaintiffs have never provided any computation of the damages claimed against Mr. Rico or timely disclosed their theory of damages beyond that stated in the pleadings or provided a basic method or formula. If Plaintiffs did not have information about their damages, they would still have the duty to diligently obtain the necessary information

8

147682675.2

and prepare and provide their damages computation within the discovery period. *Jackson v. United Artists*, 278 F.R.D. at 593. Plaintiffs, however, did have the necessary information to disclose their damages calculation because they made a full disclosure as to all Defendants collectively (**Exh. A-8** at 154:21-156:4), even after their vigorous assertions that Mr. Rico and Wells Fargo were not one in the same. *See e.g.* Plaintiffs' Reply in Support of Plaintiffs' Motion to Compel Defendant Jose Rico's Deposition and for Sanctions and Response to Cross-Motion for Protective Order to Limit Deposition of Jose Rico and for Sanctions [ECF No. 180]. Further, Plaintiffs cannot shift their burden to determine the amount of the alleged damages to Mr. Rico. *Jackson v. United Artists*, 278 F.R.D. at 593.

This is especially true here where any purported damage could only be related to the relevant time period of the alleged "fraudulent scheme orchestrated by Wells Fargo and Maza….[f]rom approximately mid-2013 to April 2019," and Mr. Rico's first involvement of any kind came "[i]n summer 2018." Compl. ¶¶ 14, 53. There is no information that Plaintiffs would have required from Mr. Rico, nor did Plaintiffs conduct discovery credibly related to their alleged damages against him. The last discovery deadline closed in this case on July 14, 2023. *See* Order on Joint Motion to Extend One Deadline in Case Management Plan (Fifteenth Request) [ECF No. 358]. And both Plaintiffs' damages and banking experts failed to provide any specific calculation to put Mr. Rico on notice of the damages being sought individually against him. **Exhs. A-9** and **A-11**. Thus, given Plaintiffs' failure to disclose any computation of damages as a necessary element of their claims against Mr. Rico individually, the Court can conclude that they have failed to provide any evidence of damages, an essential element of each of their claims, and enter summary judgment in Mr. Rico's favor on each claim.

    **C.**    **<u>Mr. Rico Is Further Entitled to Summary Judgment on the Causes of Action 2 – Negligence, 3 – Aiding and Abetting Breach of Fiduciary Duty, and 7 – Civil Conspiracy Where Plaintiffs Lack Significantly Probative Evidence of an Essential Element of Each Claim.</u>**

Without waiving his arguments in Section B, above, Mr. Rico respectfully asserts Plaintiffs lack significantly probative evidence of an essential element for each of their causes of action for 2 – Negligence, 3 – Aiding and Abetting Breach of Fiduciary Duty, and 7 – Civil

9

147682675.2

Conspiracy. As a result, Plaintiffs cannot carry their ultimate burden of persuasion at trial and survive summary judgment. *Nissan Fire & Marine*, 210 F.3d at 1102. Below, Mr. Rico addresses the bases for granting summary judgment as to each of these claims in turn.

### 1. Plaintiffs' Cause of Action 2 – Negligence Fails as a Matter of Law Because Mr. Rico Did Not Owe Plaintiffs a Duty of Care.

"[T]o prevail on a negligence claim, a plaintiff must establish four elements: (1) the existence of a duty of care, (2) breach of that duty, (3) legal causation, and (4) damages." *Sanchez v. Wal-Mart Stores, Inc.*, 125 Nev. 818, 823, 221 P.3d 1276, 1280 (2009). Here, Plaintiffs cannot establish the essential element of the existence of a duty of care.

Plaintiffs have alleged that all causes of action against Mr. Rico occurred while he was acting as an agent or employee of Co-Defendant, Wells Fargo. Compl. ¶¶ 11, 50, 63, 73, 88-90, 94, 98, 104-105, 108, 110-111, 113-114, 116-177, and 125-126. Plaintiffs, however, have not alleged a cognizable duty of care owed to them by Wells Fargo or its agents or employees, including Mr. Rico. All of the relevant negligence allegations, in fact, involve purported common law duties between a fiduciary and a bank, which no longer exist under Nevada law.

Absent extraordinary circumstances, which are not present here, a bank and its agents and employees do not owe any duty to third parties such as Plaintiffs. *Giles v. General Motors Corp.,* 494 F.3d 865, 881 (9th Cir. 2007) (providing examples of recognized legal duties, including those of a doctor and patient, attorney and client, spouses, fiancés, corporate officers or directors and corporations, "confidential relationships," or "special relationships"); *see also Kerr v. Bank of America, N.A.*, 2016 WL 54670, at *4 (D. Nev. Jan. 5, 2016) ("[A] lender owes no fiduciary duties to a borrower absent exceptional circumstances, such as when a special relationship exists between the two parties."). Here, Plaintiffs specifically assert a common law duty that "Defendants owed a duty to impart correct information after responding to Plaintiffs' inquiries, as detailed herein." Compl. ¶ 160. The details thereafter allege, "Wells Fargo, through its employees and agents Darrall and Rico, continuously and throughout the duration of Maza's fraud, made false representations to Plaintiffs...." *Id.* ¶ 161.

Notwithstanding the redundancy of these allegations to those offered in support of

10

147682675.2

causes of action 4 – Fraudulent Misrepresentation and 6 – Fraudulent Concealment, Plaintiffs misstate a bank's duty owed to non-customers. It is settled law that Nevada enacted the Uniform Fiduciaries Act (the "Act") in order to "relax the standards of care owed by banks to principals and third parties when dealing with fiduciary accounts." *Guild v. First Nat. Bank of Nevada*, 92 Nev. 478, 484, 553 P.2d 955, 958 (1976). And, in so doing, Nevada "displaced any common law negligence claim involving a fiduciary and a bank." *Dunham Tr. Co. as Tr. of Darrell N. Garmann Testamentary Tr. 2012 v. Wells Fargo Bank, N.A.*, 2019 WL 489095, at *4 (D. Nev. Feb. 7, 2019). Under the Act, liability in circumstances such as those asserted by Plaintiffs in the instant case may not be predicated on a showing of negligence. *Guild*, 92 Nev. at 484, 553 P.2d at 958. "The fact that the legislature specifically excluded negligent conduct from the definition of good faith is a clear indication of its intent to supplant liability for common law negligence." *Dunham Tr. Co.*, 2019 WL 489095, at *4.

For these reasons, it is undisputed that Plaintiffs' generic allegations that Mr. Rico and the other Defendants owed a duty to impart certain information to Plaintiffs is a phantom duty not supported by Nevada law. Without any recognized duty of care owed to Plaintiffs by Wells Fargo or its agents and employees, then, Mr. Rico's motion for summary judgment as to Plaintiffs' cause of action 2 – Negligence should be granted in its entirety.

> ### 2. Plaintiffs Cause of Action 3 – Aiding and Abetting Breach of Fiduciary Duty Also Fails as a Matter of Law Because Plaintiffs Have No Significantly Probative Evidence That Mr. Rico Knowingly Participated in Maza's Alleged Breach of Fiduciary Duty.

Plaintiffs' predicate their third cause of action for Aiding and Abetting Breach of Fiduciary Duty entirely on the allegations that Mr. Rico was "aware that Maza was investing money on behalf of third-party, non-customer clients" and "knew that <u>Maza had a fiduciary duty to Plaintiffs</u>." Compl. ¶ 174 (emphasis added). To impose liability, however, Plaintiffs must have significantly probative evidence that Mr. Rico knowingly participated in Maza's breach of a fiduciary duty to Plaintiffs. The allegations that Mr. Rico handled Maza's account for a limited period from August 2018 to February 2019 (Compl. ¶ 53, 134-137), that Mr. Rico vouched for Maza's business, or even that Wells Fargo, and presumably by extension Mr. Rico, should have

11

147682675.2

known to investigate Maza's actions further (Compl. at ¶ 177), are wholly insufficient to establish the Mr. Rico knowingly participated in anything Maza did to harm Plaintiffs.

To maintain an aiding and abetting breach of fiduciary duty claim, Plaintiffs must allege: "(1) a fiduciary relationship exists, (2) the fiduciary breached the fiduciary relationship, (3) the third party knowingly participated in the breach, and (4) the breach of fiduciary duty resulted in damages." *New England Life Ins. Co. v. Lee*, 2015 WL 1413391, at *7 (D. Nev. Mar. 27, 2015) (citing to *In re Amerco Derivative Litig.*, 127 Nev. 196, 225, 252 P.3d 681, 702 (2011)) (Nevada has adopted the standard applied by Delaware courts requiring that "the third party knowingly participated in the breach"); *Malpiede v. Townson*, 780 A.2d 1075, 1097 (Del. 2001) (knowing participation requires the third party "act with the knowledge that the conduct advocated or assisted constitutes such a breach.").

Here, again, the evidence adduced during discovery at best raises the question what Mr. Rico should have known, which cannot satisfy the element requiring actual knowledge. *See In re Amerco Derivative Litig.*, 127 Nev. at 226, 252 P.3d at 702 (2011). Plaintiffs do not identify any evidence showing more of Mr. Rico's involvement in Maza's breach beyond ordinary communications regarding a customer's account, inclusive of certain transfer processes. Casting further doubt on Plaintiffs' evidence is the undisputed fact that some communications attributed to Mr. Rico were actually fabricated by Maza's assistant, Lucy Herrera. **Exh. A-3** at 206:2-8. Under any fair review of the evidence, therefore, Plaintiffs do not have significantly probative evidence to be entitled to a verdict on their claim for 3 – Aiding and Abetting Breach of Fiduciary Duty, and Mr. Rico should be granted summary judgment as to the entirety of this claim.

3. ***Plaintiffs' Cause of Action 7 – Civil Conspiracy Fails as a Matter of Law Because Mr. Rico Could Not Conspire With Wells Fargo Under the Intracorporate Conspiracy Doctrine, and Plaintiffs Have No Significantly Probative Evidence That Mr. Rico Conspired With Maza.***

Again, Plaintiffs factual allegations are that, at all relevant times, Mr. Rico acted in his capacity as an agent or employee of Wells Fargo. Compl. ¶¶ 11, 50, 63, 73, 88-90, 94, 98, 104-105, 108, 110-111, 113-114, 116-177, and 125-126. Under the intracorporate conspiracy

12

147682675.2

doctrine, however, a corporation's employees acting as agents are deemed incapable of conspiring among themselves or with the corporation. The doctrine developed in antitrust law (*United States v. Hughes Aircraft Co.*, 20 F.3d 974, 979 (9th Cir. 1994)) and stems from the basic agency principles "attribute[ing] the acts of agents of a corporation to the corporation so that all of their acts are considered to be those of a single legal actor." *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 603 (5th Cir. 1981). In the eyes of the law, "[i]t is not possible for a single legal entity consisting of the corporation and its agents to conspire with itself, just as it is not possible for an individual person to conspire with himself." *Dickerson v. Alachua Cnty. Comm'n*, 200 F.3d 761, 766 (11th Cir. 2000).

Under Nevada law specifically, "[a]n actionable civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage." *Collins v. United Federal Sav. & Loan Ass'n*, 99 Nev. 284, 303, 662 P.2d 610, 622 (1983). However, "agents and employees of a corporation cannot conspire with their corporate principle or employer where they act in their official capacities on behalf of the corporation and not …. for their individual advantage." *Id.* Thus, under both federal and state law the limitation imposed by the intracorporate conspiracy doctrine prevents a finding of liability for conspiracy without a showing the employee was acting individually and for their individual advantage. Plaintiffs have neither discovered nor produced, because it does not exist, substantively probative evidence that Mr. Rico acted with a sufficiently personal motive.

Here, Plaintiffs sole allegations of Mr. Rico's personal motive are of "increased compensation at Wells Fargo" that Mr. Rico "likely received as a result of his relationships with Maza and FPM" and "Maza compensat[ing] Rico with gifts and concert tickets on multiple occasions." Compl. ¶ 107. First, for the personal motive exception to the intracorporate conspiracy doctrine to apply, it must be "where a co-conspirator possesses a personal stake independent of his relationship to the corporation." *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 179 (4th Cir. 2002) (emphasis added); *see also Selman v. Am. Sports Underwriters, Inc.*, 697 F.Supp. 225, 239 (W.D. Va. 1988) ("Certainly, under the most permissive interpretation of its

13

language, an employee or agent of a corporation would always meet the exception since he would surely have an independent personal stake in the health and profitability of the corporation. Such an interpretation is overbroad.").

Even if Mr. Rico's compensation did increase during the few months that coincide with his assignment to the Maza accounts, this benefit stems directly from his relationship to Wells Fargo. By pursuing opportunities to grow Wells Fargo's client base and increase the company's revenue, Mr. Rico was assuredly acting within the course and scope of his employment. Argument that Mr. Rico sought to increase the profitability of his employer, and in turn directly benefit as an employee, standing alone cannot establish the personal stake necessary to bar the application of the intracorporate conspiracy doctrine.

Plaintiffs, then, have only primarily unsubstantiated references to "gifts and concert tickets" to reach the personal stake exception. The actual evidence in the case, however, shows only a total of two (2) concert tickets that Mr. Rico accepted from Maza. **Exh. A-5** at 9:6-9, 12:1-5. No evidence exists to link the tickets to any nefarious activity, and no presumption exists that would permit a finding that one exists. Further, Mr. Rico testified at his deposition that he believed the tickets to be complimentary and of no monetary value. Plaintiffs have not produced evidence of other gifts or concert tickets, and even if the concert tickets in question did have monetary value, allowing such a nominal benefit to overcome the intracorporate conspiracy doctrine would surely render the doctrine itself meaningless.

For these reasons, with no ability to conspire with Wells Fargo and no substantially probative evidence he conspired with Maza, Mr. Rico should be granted summary judgment on Plaintiffs' cause of action 7 – Civil Conspiracy in its entirety.

### D. Mr. Rico Is Entitled to Summary Judgment on Plaintiffs' Prayer for Punitive Damages.

Should the Court not grant summary judgment on Plaintiffs' claims for the reasons otherwise stated herein, Mr. Rico respectfully asserts he is still entitled to summary judgment as to any demand or prayer for punitive damages. Plaintiffs' claims for 3 – Aiding and Abetting Breach of Fiduciary Duty, 4 – Fraudulent Misrepresentation, 6 – Fraudulent Concealment, and 7

14

147682675.2

– Civil Conspiracy seek an award of punitive damages ostensibly to make an example of Mr. Rico, separate and apart from his co-Defendants. For the reasons stated in the sections above, and additionally in this section, Plaintiffs' requests for punitive damages should fail a matter of law because Plaintiffs have not produced evidence warranting their entitlement to exemplary damages.

A plaintiff is "not automatically entitled to punitive damages." *Bongiovi v. Sullivan,* 122 Nev. 556, 581, 138 P.3d 433, 450 (2006). "Instead, punitive damages may be awarded when the plaintiff proves by clear and convincing evidence that the defendant is 'guilty of oppression, fraud or malice, express or implied.'" *Id.,* 122 Nev. at 581, 138 P.3d at 450-51 (quoting NRS 42.005(1)). Oppression means "despicable conduct that subjects a person to cruel and unjust hardship with conscious disregard of the rights of the person." NRS 42.001(4). Fraud means "an intentional misrepresentation, deception or concealment of a material fact known to the person with the intent to deprive another person of his rights or property or to otherwise injure another person." NRS 42.001(2). Malice, express or implied, means "conduct which is intended to injure a person or despicable conduct which is engaged in with a conscious disregard of the rights or safety of others." NRS 42.001(3).

A person acts in "conscious disregard" of a person's rights when there is "knowledge of the probable harmful consequences of a wrongful act and a willful and deliberate failure to act to avoid those consequences." NRS 42.001(1). Conscious disregard further requires a showing that the tortfeasor acted "with a culpable state of mind." *Countrywide Home Loans, Inc. v. Thitchener,* 124 Nev. 725, 743, 192 P.3d 243, 255 (2008) (en banc). To support punitive damages, a defendant's conduct "at a minimum, must exceed mere recklessness or gross negligence." *Id.* A plaintiff is, in fact, required to prove even more than "unconscionable irresponsibility." *Maduike v. Agency Rent-a-Car*, 114 Nev. 1, 5, 953 P.2d 24, 26 (1998) (quoting *First Interstate Bank v. Jafbros Auto Body*, 106 Nev. 54, 57, 787 P.2d 765, 767 (1990) (holding "even unconscionable irresponsibility will not support a punitive damages award"). The evidence in the instance case shows Plaintiffs simply cannot meet their burden to allow their prayer for punitive damages to survive summary judgment.

15

147682675.2

## IV.

## <u>CONCLUSION</u>

For all the foregoing reasons, Defendant Jose Rico respectfully asserts there are no genuine issues of material fact that preclude the Court from granting his Motion for Summary Judgment as to the entirety of the allegations in Plaintiffs' Complaint as to him.

Dated this 28th day of July 2023.

**FOX ROTHSCHILD LLP**


*/s/ Colleen E. McCarty*
MARK J. CONNOT (SBN 10010)
COLLEEN E. MCCARTY (SBN 13186)
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
*Attorneys for Defendant, Jose Rico*

16

147682675.2

**CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of Fox Rothschild LLP and that on the 28th day of July 2023, pursuant to Rule 5(b) of the Federal Rules of Civil Procedure, I served a true and correct copy of the foregoing **DEFENDANT JOSE RICO'S MOTION FOR SUMMARY JUDGMENT** via the Court's CM/ECF system as follows:

Anthony P. Sgro, Esq.
Jennifer Willis Arledge, Esq.
Colleen N. Savage, Esq.
**SGRO & ROGER**
720 S. 7th Street
Las Vegas, Nevada 89101
TSgro@SgroandRoger.com
JArledge@SgroandRoger.com
CSavage@SgroandRoger.com
*Attorneys for Plaintiff*

Jeffrey Willis, Esq.
Richard S. Gordon, ESq.
Erica J. Stutman, Esq.
Hayley J. Cummings, Esq.
Gregory J. Marshall, Esq.
Jacob C. Jones, Esq. (*Pro Hac Vice*)
**SNELL & WILMER L.L.P.**
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
JWillis@swlaw.com
RGordon@swlaw.com
EStutman@swlaw.com
HCummings@swlaw.com
GMarshall@swlaw.com
JCJones@swlaw.com

Courtney Caprio, Esq. (*Pro Hac Vice*)
Jeffrey W. Gutchess, Esq. (*Pro Hac Vice*)
Joanna Niworowski, Esq. (*Pro Hac Vice*)
Amanda Suarez, Esq. (*Pro Hac Vice*)
**AXS LAW GROUP, PLLC**
2121 NW 2nd Avenue, Suite 201
Miami, Florida 33127
Courtney@axslawgroup.com
Jeff@axslawgroup.com
Joanna@axslawgroup.com
Amanda@axslawgroup.com
*Attorneys for Plaintiffs*

*/s/ Deborah L. Pressley*
An employee of Fox Rothschild LLP

17

147682675.2